No. 25-1959

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

———————————————

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO;
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO; NATIONAL ASSOCIATION OF GOVERNMENT
EMPLOYEES, INC., *Plaintiffs-Appellants*,

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO,
Local 3707, *Plaintiff*,

v.

SCOTT KUPOR, in the official capacity as Director of the Office of Personnel
Management; OFFICE OF PERSONNEL MANAGEMENT,
*Defendants-Appellees*.

———————————————

On Appeal from the United States District Court for the District of Massachusetts
No. 1:25-cv-10276-GAO

———————————————

## CORRECTED BRIEF OF AMICI CURIAE
## FORMER PUBLIC OFFICIALS AND LEGAL SCHOLARS
## IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

Danielle Leonard (#1220224)
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
dleonard@altber.com

*Additional Counsel Listed on Inside
Cover*

Norman L. Eisen, (#1216645)
Craig Becker (#63646)
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@democracydefenders.org
Craig@democracydefenders.org

James A.W. Shaw (#1133611)
Michael R. Keefe (#1177271)
**SEGAL ROITMAN, LLP**
33 Harrison Avenue, 7th Floor
Boston, MA 02111
Phone: (617) 742-0208
jshaw@segalroitman.com
mkeefe@segalroitman.com

Hon. Nancy Gertner (Ret.) (#16334)
William W. Fick (#82686)
**FICK & MARX LLP**
24 Federal Street, 4th Floor
Boston, MA 02110
Phone: (857) 321-8360
ngertner@fickmarx.com

## CORPORATE DISCLOSURE STATEMENT

*Amici* have no parent companies, and no publicly-owned corporation owns

10% or more of their stock.

/s/ Michael R. Keefe
Michael R. Keefe

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ............................................................ i

TABLE OF AUTHORITIES .................................................................................. iii

INTEREST AND IDENTITY OF *AMICI CURIAE* ...................................................1

ARGUMENT .........................................................................................................4

    I.    The Implied *Thunder Basin* Preclusion Doctrine Must be Implemented Cautiously and Only as Necessary to Effectuate Congressional Intent, Rather Than as a Tool to Insulate Unlawful Agency Action from Review.....9

    II.   Congress Intended the APA to Command Judicial Review of OPM's Arbitrary, Capricious, and Unlawful Program ...............................................13

CONCLUSION .....................................................................................................20

CERTIFICATE OF COMPLIANCE  WITH TYPE-VOLUME LIMIT .................21

CERTIFICATE OF SERVICE...............................................................................22

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Abbott Lab'ys v. Gardner*,
　387 U.S. 136 (1967) ...................................................................................4, 13

*AFGE v. Trump*,
　929 F.3d 748 (D.C. Cir. 2019) ...................................................................16, 17

*AFGE v. Trump*,
　139 F.4th 1020 (9th Cir. 2025 ....................................................................16, 18

*Alexander v. Sandoval*,
　532 U.S. 275 (2001) ...........................................................................................10

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
　598 U.S. 175 (2023) .....................................................................................*passim*

*Bowen v. Michigan Acad. of Fam. Physicians*,
　476 U.S. 667 (1986) ........................................................................................4, 10

*Buck v. Am. Airlines, Inc.*,
　476 F.3d 29 (1st Cir. 2007) ..................................................................................9

*Dep't of Commerce v. New York*,
　588 U.S. 752 (2019) ....................................................................7, 13, 14, 17

*Dep't. of Homeland Sec. v. Regents of the Univ. of Cal.*,
　591 U.S. 1 (2020) ..............................................................................................14

*Elgin v. Department of Treasury*,
　567 U.S. 1 (2012) .................................................................................10, 12, 17

*Feds for Med. Freedom v. Biden*,
　63 F.4th 366 (5th Cir. 2023) (en banc)............................................................15

*Franklin v. Massachusetts*,
　505 U.S. 788 (1992) ..........................................................................................13

*Free Enterprise Fund v. Public Company Accounting Oversight
　Board*, 561 U.S. 477 (2010) .......................................................................10, 17

iii

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964) .................................................................................10

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
  567 U.S. 209 (2012) ...................................................................6, 11, 13

*McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*,
  606 U.S. 146 (2025) ...................................................................................7

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012) .................................................................................11

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ...............................................................................19

*NAACP v. Sec'y of Hous. & Urb. Dev.*,
  817 F.2d 149 (1st Cir. 1987) ...................................................................14

*New York v. Kennedy*,
  155 F.4th 67 (1st Cir. 2025) ......................................................................8

*NTEU v. Helfer*,
  53 F.3d 1289 (D.C. Cir. 1995) .................................................................15

*NTEU v. Newman*,
  768 F. Supp. 8 (D.D.C. 1991) ..................................................................15

*NTEU v. Von Raab*,
  489 U.S. 656 (1989) .................................................................................15

*NTEU v. Vought*,
  No. 25-5091, 2025 WL 3659406 (D.C. Cir. Dec. 17, 2025)............................18

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ...........................................................................*passim*

*Trump v. AFGE*,
  ––– U.S. ––––, 145 S. Ct. 2635 (2025) ..................................................8, 12, 16

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
  578 U.S. 590 (2016) .................................................................................14

iv

*Union of Concerned Scientists v. Wheeler*,
954 F.3d 11 (1st Cir. 2020) ...................................................................14

*United States v. Fausto*,
484 U.S. 439 (1988) ...............................................................................17

*United States v. Nourse*,
34 U.S. 8 (1835) .......................................................................................4

*United States v. NTEU*,
513 U.S. 454 (1995) ...............................................................................15

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
586 U.S. 9 (2018) ...................................................................................14

*Ziglar v. Abbasi*,
582 U.S. 120 (2017) ...............................................................................10

**Federal Statutes**

5 U.S.C.
§§ 701-706...............................................................................................9
§ 706 ................................................................................................12, 17
§ 1103 ...............................................................................................7, 14
§ 1105 ...............................................................................................7, 15
§ 7134 ...............................................................................................7, 15

28 U.S.C.
§ 1331 .........................................................................................9, 11, 19

**Other Authorities**

Fed. R. App. P. 29 ......................................................................................21

Fed. R. App. P. 32 ......................................................................................21

H.R. Rep. No. 1980, 79th Cong., 2d Sess. (1946).......................................5

S. Rep. No. 752, 79th Cong., 1st Sess. (1945) ...........................................5

v

## INTEREST AND IDENTITY OF AMICI CURIAE[1]

Amicus Democracy Defenders Fund ("DDF") is a bipartisan, nonprofit organization committed to upholding the rule of law, fighting against autocracy, and defending the Constitution.  Donald B. Ayer, Ty Cobb, Barbara Comstock, Mickey Edwards, John Farmer Jr., Stuart M. Gerson, Peter Keisler, William Kristol, Philip Allen Lacovara, Trevor Potter, Alan Charles Raul, Stephen Richer, Paul Rosenzweig, Claudine Schneider, Peter M. Shane, Robert Shanks, Christopher Shays, Olivia Troye, Joe Walsh, William F. Weld, and Christine Todd Whitman (collectively with DDF, "*Amici*") are former elected officials, other government officials, and legal scholars who have collectively spent decades in public service defending the Constitution, the interests of the American people, and the rule of law.

*Amici* have a strong interest in this case, based on their commitment to ensuring access to justice through the courts for federal public servants challenging broad policies as contrary to law, preserving the proper scope of executive power, and guaranteeing the faithful and equal enforcement of federal laws.  As former

---

[1] All parties to this case have consented to the filing of this brief. This brief was authored entirely by counsel for *amici*; no party or party's counsel contributed money intended to fund the brief's preparation or submission; and no person other than *amici* contributed money intended to fund the brief's preparation or submission.

government officials, including in the federal service, amici have personally witnessed the need for an experienced, apolitical federal workforce capable of carrying out the critical operations of our federal agencies and maintaining continuity of service for Americans. The unique perspective of *amici*, informed by their public service and scholarship, make them well qualified to present arguments and perspectives to this Court that the parties alone are not likely to present.

*Amici* and their relevant background are listed below:

- Donald B. Ayer, Deputy Attorney General in the George H.W. Bush Administration from 1989 to 1990.

- Ty Cobb, Special Counsel to the President in the Trump Administration from 2017 to 2018, and Assistant U.S. Attorney from 1980 to 1986.

- Barbara Comstock, Representative of the 10th District of Virginia from 2015 to 2019 (R).

- Mickey Edwards, Representative of the 5th District of Oklahoma from 1977 to 1993 (R).

- John Farmer Jr., New Jersey Attorney General from 1999 to 2002; University Professor, Rutgers University, Dean Rutgers Law School (2009-2013).

- Stuart M. Gerson, Assistant Attorney General for the Civil Division in the George H.W. Bush Administration from 1989 to 1993 and Acting United States Attorney General in the Clinton Administration in 1993.

- Peter Keisler, Acting Attorney General in the George W. Bush Administration in 2007; Assistant Attorney General for the Civil Division from 2003 to 2007; Principal Deputy Associate Attorney General and Acting Associate Attorney General from 2002 to 2003; Assistant and Associate Counsel to President Ronald Reagan from 1986 to 1988.

2

- William Kristol, Chief of Staff to Vice President Dan Quayle from 1989 to 1993; Board Member of Democracy Defenders Fund.

- Philip Allen Lacovara, Deputy Solicitor General in the Richard M. Nixon Administration from 1972 to 1973 and Counsel to the Special Prosecutor, Watergate Special Prosecutor's Office from 1973 to 1974.

- Trevor Potter, Chairman of the Federal Election Commission in 1994 and Commissioner of the Federal Election Commission from 1991 to 1995.

- Alan Charles Raul, General Counsel of the Office of Management and Budget from 1988 to 1989 and Associate Counsel to President Ronald Reagan from 1986 to 1988.

- Stephen Richer, Recorder Maricopa County, AZ from 2021 to 2025 (R); Board Member of Democracy Defenders Fund.

- Paul Rosenzweig, Deputy Assistant Secretary for Policy of the Department of Homeland Security in the George W. Bush Administration from 2005 to 2009.

- Claudine Schneider, Representative of Rhode Island from 1981 to 1991 (R).

- Peter M. Shane, Jacob E. Davis and Jacob E. Davis II Chair in Law Emeritus at The Ohio State University's Moritz College of Law and Attorney-Adviser in the Office of Legal Counsel from 1979 to 1981.

- Robert Shanks, Deputy Assistant Attorney General for the Office of Legal Counsel in the Reagan Administration from 1981 to 1984.

- Christopher Shays, Representative of the 4th District of Connecticut from 1987 to 2009 (R).

- Olivia Troye, Special Advisor, Homeland Security and Counterterrorism to Vice President Mike Pence from 2018 to 2020.

- Joe Walsh, Representative of the 8th Congressional District of Illinois from 2011 to 2013 (R); Board Member of Democracy Defenders Fund.

3

- William F. Weld, Governor of Massachusetts from 1991 to 1997 (R).

- Christine Todd Whitman, Governor of New Jersey from 1994 to 2001 (R) and Administrator of the Environmental Protection Agency from 2001 to 2003.

**ARGUMENT**

"We begin," as the Supreme Court has instructed, "with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986); *accord Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186 (2023) ("Congress rarely allows claims about agency action to escape effective judicial review."). Indeed, *"[f]rom the beginning,"* the Supreme Court has carefully guarded Article III review of governmental action, and "our cases [have established] that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Bowen*, 476 U.S. at 670 (*quoting Abbott Lab'ys v. Gardner,* 387 U.S. 136, 140 (1967)) (emphasis added); *see also United States v. Nourse,* 34 U.S. 8, 28–29 (1835) ("It would excite some surprise if, in a government of laws and of principle, furnished with a department whose appropriate duty it is to decide questions of right, not only between individuals, but between the government and individuals; a ministerial officer might, at his discretion, issue this powerful process ... leaving to th[e] debtor no remedy, no appeal to the laws of his country, if he should believe

4

the claim to be unjust. But this anomaly does not exist; this imputation cannot be cast on the legislature of the United States.").  Congress itself has long agreed:

> Very rarely do statutes withhold judicial review. It has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of authority granted or to the objectives specified. Its policy could not be otherwise, for in such a case statutes would in effect be blank checks drawn to the credit of some administrative officer or board.

S. Rep. No. 752, 79th Cong., 1st Sess., p.212 (1945).[2]

The District Court's dismissal of this case on the basis of *implied* statutory preclusion, thereby insulating the administration's actions from any meaningful judicial review, directly threatens these bedrock principles.  Defendant United States Office of Personnel Management ("OPM") cloaked itself below in an implied preclusion doctrine derived from *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207–13 (1994), that was designed to adhere to congressional intent that certain statutory claims be channeled to administrative adjudicatory agencies designed and intended to hear those claims.  But the Administrative Procedures Act ("APA") claims in this case cannot *ever* be heard through administrative channels

---

[2] *Accord* H.R. Rep. No. 1980, 79th Cong., 2d Sess., p.275 (1946) ("The statutes of Congress are not merely advisory when they relate to administrative agencies, any more than in other cases. To preclude judicial review under [the APA,] a statute, if not specific in withholding such review, must upon its face give clear and convincing evidence of an intent to withhold it. The mere failure to provide specially by statute for judicial review is certainly no evidence of intent to withhold review.").

(and therefore by any court reviewing those proceedings), and are brought against an agency (OPM) whose actions challenged here are entirely outside the jurisdiction of the agencies cited by the District Court.  As the Supreme Court most recently instructed in *Axon Enterprises*, the *Thunder Basin* doctrine must be construed to respect, rather than defy, the strong presumption of judicial review of government action. 598 U.S. at 186.  OPM cannot use this doctrine to evade judicial review.

The myriad problems and dangers of using an implied, judge-made *Thunder Basin* doctrine to trump express statutory language are thoroughly explained in Justice Gorsuch's recent concurrence in *Axon Enterprises*, 598 U.S. at 205-217. The text of the statutes invoked by the administration here, the Civil Service Reform Act ("CSRA"), which includes the Federal Service Labor-Management Relations Statute ("FSLMRS"), provides no support at all for the administration's fantastical assertion that Congress intended to bar judicial review of unlawful government action simply *because* the issues involve federal employment.  As the Supreme Court has also recently explained, it has "*never*" endorsed implied preclusion predicated on "some general similarity of subject matter." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,* 567 U.S. 209, 223 (2012) (emphases added).  We write to urge the Court to heed Justice Gorsuch's sage warning, exercise caution, and reverse the District Court's expansion of *Thunder-*

*Basin* far beyond its moorings and existing Supreme Court precedent. 598 U.S. at 217 (Gorsuch, J., concurring) ("Respectfully, this Court should be done with the *Thunder Basin* project. I hope it will be soon."); *see also McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 157 (2025) (Kavanaugh, J.) ("When Congress wants to preclude judicial review … it can easily say so.").

The District Court's rejection of Article III jurisdiction to review the lawfulness of OPM's Fork in the Road program (invented from whole cloth in early January 2025 without statutory authorization or proper procedure), is all the more problematic because the claims at issue involve government-wide actions and the "command" of judicial review under the APA. *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019). Consistent with the general presumptions discussed above, the Supreme Court has imposed a very high bar for concluding that a subsequent statute that does not expressly preclude APA claims was *impliedly* intended to foreclose APA review. *See, e.g., McLaughlin*, 606 U.S. at 162 ("ambiguity does not suffice"). And further, as explained below, the later-enacted statutes governing federal civil service and federal labor relations invoked by the District Court in this case actually *incorporate* the APA (*see* 5 U.S.C. §§1103, 1105, 7134), and cannot be fairly read to eviscerate the APA's central command that agency action is subject to judicial review.

7

Neither the Supreme Court nor this Court has ever endorsed the sweeping interpretation of the controversial *Thunder Basin* doctrine that was advanced by OPM here to override the District Court's jurisdiction to hear Plaintiffs' APA claims.  This Court recently observed that the headwinds are against this doctrine: *New York v. Kennedy*, 155 F.4th 67, 75 (1st Cir. 2025) ("[I]n issuing its interim order in *AFGE*, the Supreme Court likely decided that the CSRA did *not* funnel the dispute at issue . . . to the MSPB.") (*citing Trump v. AFGE,* ⸺ U.S. ⸺, 145 S. Ct. 2635, (2025) (mem.)).  Invited on several occasions last term by the administration to address the argument that the CSRA impliedly forecloses judicial review of all claims related to federal employment (including multiple cases against OPM), the Court never took that bait.

This case was brought at a critical moment in our nation's history, to challenge government actions impacting *millions* of employees and all those who rely on their services, and was unfairly and incorrectly halted at the outset.  Since the District Court refused jurisdiction, the implementation of the challenged program has been and continues to be devastating to the proper functions of the federal agencies Congress created, authorized, and funded.[3]  This Presidential

---

[3] *See, e.g.,* The Washington Post, *Here are the agencies that were cut the most by Trump, new data shows* (Jan. 10, 2026), available at: https://www.washingtonpost.com/politics/2026/01/10/federal-cuts-trump-agencies-data/; The Washington Post, *The federal government is paying more than 154,000 people not to work* (July 31, 2025), available at:

administration continues to seek to expand its powers in relation to Congress at the same time that it urges the federal courts to remove long-standing checks and balances under the law. *Amici* urge this Court to hold that Congress has not implicitly deprived the District Court of its authority to adjudicate Plaintiffs' APA claims challenging OPM's actions as unlawful, arbitrary, and capricious, and thereby to require the courts of this Circuit to exercise their most fundamental role under Article III to provide judicial review of executive action as Congress and the Constitution intended.

**I.     The Implied *Thunder Basin* Preclusion Doctrine Must be Implemented Cautiously and Only as Necessary to Effectuate Congressional Intent, Rather Than as a Tool to Insulate Unlawful Agency Action from Review**

In the face of express grant of jurisdiction over Plaintiffs' federal claims (28 U.S.C. §1331; 5 U.S.C. §§701-706), the District Court relied solely on the doctrine of implied administrative "channeling" that is outlined in *Thunder Basin* to conclude that it lacked jurisdiction. But the Supreme Court has significantly "cabin[ed]" such implied doctrines over the past thirty years. *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 37 (1st Cir. 2007).

Although federal courts once readily departed from the text enacted by Congress—fashioning "implie[d]" doctrines as they deemed "necessary to make

---

https://www.washingtonpost.com/politics/2025/07/31/federal-workers-doge-buyout-paid/.

9

effective the congressional purpose" expressed in that text, *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964)—today, that approach is recognized as an "ancien regime." *Ziglar v. Abbasi*, 582 U.S. 120, 131-32 (2017) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)). Today, what the judiciary may perceive as to Congress's intentions and expectations "matters only to the extent it clarifies text." *Sandoval*, 532 U.S. at 288.

As the Supreme Court directed most recently in *Axon Enterprises*, the *Thunder Basin* doctrine of implied administrative channeling must be considered against this backdrop. 598 U.S. at 186 (citing *Bowen*, 476 U.S. at 670).  In *Thunder Basin* itself, as well as subsequent decisions including *Elgin v. Department of Treasury*, 567 U.S. 1, 22 (2012); *Free Enterprise Fund v. Public Company Accounting Oversight Board,* 561 U.S. 477, 489 (2010); and *Axon Enterprises*, 598 U.S. at 185-86, the Supreme Court has approached this implied doctrine with caution. The Court has closely scrutinized whether the "claims" at issue are "of the type Congress intended to be reviewed within th[e] statutory structure," *Thunder Basin*, 510 U.S. at 212.  The Court has only twice reached that conclusion, in *Thunder Basin* itself and *Elgin*, 567 U.S. at 23, and, more recently, twice has not. *Axon Enter.,* 598 U.S. at 196; *Free Enter. Fund,* 561 U.S. at 491.

As Justice Kagan, writing for the Court in *Axon Enterprises*, explained, "a statutory review scheme… does not necessarily extend to every claim concerning

10

agency action." 598 U.S. at 185. This is consistent with the Court's nearly unanimous instruction in *Patchak* that overlapping subject matter and remedies are simply *not sufficient grounds* to imply preclusion of federal claims. 567 U.S. at 216; *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) ("[J]urisdiction conferred by 28 U.S.C. §1331 should hold firm against 'mere implication flowing from subsequent legislation.'"). Justice Gorsuch has gone further, criticizing courts' employment of an implied doctrine to re-write express statutory grants of jurisdiction to Article III courts as contrary to law and ripe for abandonment. 598 U.S. at 205 (Gorsuch, J., concurring) ("There are many problems with the *Thunder Basin* project, but start with its sheer incoherence."); *id.* at 207 (Gorsuch, J., concurring) ("But what gives courts authority to engage in this business of jurisdiction-stripping-by-implication?"). Justice Gorsuch invited a return to first principles that should give any court great pause before expanding this doctrine:

> Federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821) (Marshall, C. J., for the Court)…
>
> *Thunder Basin* defies these foundational rules. Maybe worse, it exhibits familiarity with none of them…
>
> Divesting jurisdiction by mere implication goes from out-of-bounds to the name of the game. Along the way, this Court arrogates to itself a power to control the jurisdiction of lower federal courts that the Constitution reserves to Congress….

11

> We have no authority to froth plain statutory text with factors of our own design, all with an eye to denying some people the day in court the law promises them.

*Id.* at 207-08, 217 (Gorsuch, J., concurring). While the Court did not accept Justice Gorsuch's invitation to abandon this doctrine entirely in 2023, as discussed above, it has avoided this doctrine since, and allowed *Trump v. AFGE* to proceed below. 145 S. Ct. 2635 (Sotomayor, J., concurring in "the Court's stay because it leaves the District Court free to consider those [merits] questions in the first instance."). At the very least, this Court should construe *Thunder Basin* narrowly and with great caution.

And make no mistake, the District Court's holding expands existing doctrine. The Supreme Court has never channeled any APA claim, let alone a claim brought challenging a government-wide federal program created by an agency that cannot even brought before the administrative tribunals at issue. The decisions and actions at issue in this case are not "covered adverse employment action[s]" taken against individual employees like the terminations by an employing agency at issue in *Elgin*. 567 U.S. at 21. Neither the Merit Systems Protection Board nor the Federal Labor Relations Authority has any jurisdiction to "hold unlawful and set aside" the unlawful OPM actions at issue here, or to enforce the procedural rule-making requirements of the APA. 5 U.S.C. §706. The administration's argument below boils down to the incorrect contention that

12

anything employment-related must be channeled based on subject-matter alone, no matter whether the challenged action is a rule, policy, program, or something else entirely rather than a CSRA covered individual personnel action or FSMLRS covered unfair labor practice or collective bargaining dispute.  As Justice Kagan cogently recognized in *Patchak*, subject-matter alone has *never* been a basis to imply preclusion.  567 U.S. at 216.

**II.    Congress Intended the APA to Command Judicial Review of OPM's Arbitrary, Capricious, and Unlawful Program**

The District Court's conclusion that it "lacks subject matter jurisdiction over the plaintiffs' claims in light of the remedies available under the CSRA and FSL-MRS" (Sept. 24, 2025 Order), gives no weight at all to the express grant of judicial review in the statute under which the Plaintiffs have sued: the APA.

As previously explained, the *Thunder Basin* doctrine operates as an approach to statutory interpretation that begins by asking whether the claims at issue are of the "type" that *Congress* intended to send for administrative adjudication prior to judicial review by an Article III court.  510 U.S. at 212.  The Plaintiffs sued here under the APA.  Through the APA, Congress established what the Supreme Court recently described as a "command" for judicial review.  *New York*, 588 U.S. at 772.  The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992).  *See also Abbott*

13

*Lab'ys,* 387 U.S. at 140 (the APA embodies the "basic presumption of judicial review"); *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 17 (1st Cir. 2020) ("There is a 'strong presumption' of judicial review under the APA."); *NAACP v. Sec'y of Hous. & Urb. Dev.*, 817 F.2d 149, 152 (1st Cir. 1987) ("[F]ederal action is nearly always reviewable for conformity with statutory obligations...."). Time and again, the Supreme Court has held that even express APA exceptions to judicial review must be read "'quite narrowly.'" *Dep't. of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 17 (2020) (quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018)); *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 601-02 (2016); *New York*, 588 U.S. at 772.[4]

Against this express command of judicial review of OPM's actions under the APA, Defendants offer only implication. But in evaluating whether the CSRA implicitly overrules the APA, the Court cannot overlook the provisions of that statute that directly address and incorporate the APA. The APA (1946) pre-dated the CSRA and FSLMRS (1978). Far from intending to silently eradicate judicial review under the APA, Congress acknowledged the importance and applicability of the APA in those very statutes. *See* 5 U.S.C. §1103 (CSRA: requiring the Director

---

[4] The District Court's conclusion that it lacked jurisdiction over APA claims here that neither arise from nor rely on the CSRA or FSLMRS is even more "implausible" than the contention that any claims "arising from a deportation proceeding" were subject to a "general jurisdictional limitation" in the immigration statutes at issue in *Department of Homeland Security*, 591 U.S. at 1.

of OPM to comply with APA notice and comment rule-making); §1105 (CSRA: "in the exercise of the functions assigned under this chapter, the Director [of OPM] shall be subject to [APA]); §7134 (APA also applies to any rules adopted pursuant to FSLMRS).

Consistent with this command of judicial review of agency action set forth in the APA, OPM has long been understood to be accountable for its actions impacting federal employment under the APA. *See, e.g.*, *NTEU v. Helfer*, 53 F.3d 1289, 129293 (D.C. Cir. 1995); *NTEU v. Newman*, 768 F. Supp. 8, 12 (D.D.C. 1991) (enjoining OPM program for federal government hiring: "[t]he failure to comply with the APA's mandate of rulemaking via notice to the public, and the failure to invite, receive, and respond to comments from the public, is patent. Accordingly, the rule must be invalidated."). And, as the Fifth Circuit explained in *Feds for Med. Freedom v. Biden*: "[a] long line of cases establishes that federal employees can bring facial, pre-enforcement actions against federal [employment] policies …" 63 F.4th 366, 378 (5th Cir. 2023) (en banc), *judgment vac'd as moot*, 144 S. Ct. 480 (2023).[5] The notion that the CSRA channels *all* matters touching on

---

[5] The Fifth Circuit pointed to examples of the Supreme Court's consideration of challenges by federal employees to government policies and programs as unlawful that were not channeled because they related to federal employment. *Id.* at 378-79 (citing *NTEU v. Von Raab*, 489 U.S. 656 (1989) (pre-enforcement challenge to drug-testing program for federal employees); *United States v. NTEU*, 513 U.S. 454 (1995) (pre-enforcement challenge to a law prohibiting federal employees from accepting honoraria).

federal employment, as OPM claimed below and the District Court held, defies this well-established history, as well as the express language of all of these statutes.

Indeed, the Ninth Circuit recently rejected the administration's argument, holding in *AFGE v. Trump* that APA claims brought by federal employee unions against OPM, among others, that challenge the authority for and legality of OPM's government-wide actions *related to federal employment*, were not channeled by the CSRA, explaining: "Plaintiffs are not challenging those employment decisions with respect to individual employees. Rather, they are challenging Defendants' constitutional and statutory authority to direct the federal agencies to take such actions in the first place." 139 F.4th 1020, 1031 (9th Cir. 2025), *stay granted on other grounds*, 145 S. Ct. 2635 (2025) (mem.).

Further, no Supreme Court or First Circuit authority requires this Court to expand *Thunder Basin* to preclude Plaintiffs' APA claims challenging this "Fork Directive" program as arbitrary and capricious in violation of the APA and as contrary to the Antideficiency Act. Plaintiffs' claims are *not* based on the statutes OPM invokes to justify channeling.[6] Indeed, no Supreme Court decision has applied *Thunder Basin* to channel claims that arise only under the APA, with its

---

[6] "It is telling that in nearly every case cited by Defendants in which a court channeled a constitutional or statutory claim through the CSRA, the plaintiffs raised at least one claim properly within the unquestioned jurisdiction of the MSPB or FLRA." *AFGE*, 139 F.4th at 1031.

16

express mandate to the federal courts to provide review of agency action, or claims that are based on a different statute than that which the defendant claims creates an administrative adjudicatory scheme precluding judicial review. *See*, *e.g.*, *Axon*, 598 U.S. at 185 (no APA claim); *Elgin*, 567 U.S. at 22 (same); *Free Enter. Fund*, 561 U.S. at 489 (same); *United States v. Fausto*, 484 U.S. 439, 453 (1988) (same); *Thunder Basin,* 510 U.S. at 212 (same).  The District Court accepted the administration's invitation to rely on the D.C. Circuit's 2019 decision in *AFGE v. Trump*, 929 F.3d 748 (D.C. Cir. 2019), which required administrative channeling of challenges to three Executive Orders addressing labor-management relations.  But the plaintiffs in *AFGE v. Trump* did not assert an APA claim and that Court did not attempt to assess whether APA claims challenging agency decision-making as substantively and procedurally unlawful are the "type" that Congress *intended*, silently, to send to administrative agencies (that cannot hear those claims).  *Id.* at 753-54.[7]   The Ninth Circuit's reasoning distinguishing that decision (as involving

---

[7] The *Elgin* Court's conclusion that the Federal Circuit, upon review of an individual employee's challenge to termination, can consider a constitutional challenge to a statute the agency applied (there, under the Equal Protection Clause), does not apply to APA claims challenging a rule, policy, or program as unlawful or arbitrary and capricious. 567 U.S. at 19.  APA claims are intended by Congress to be on the "whole record" that pertains to the challenged final agency action or rulemaking (which would and could never exist in these administrative proceedings, or the subsequent limited appellate review).  5 U.S.C. §706; *see New York,* 588 U.S. at 780.  Substantive and procedural APA claims are both qualitatively and functionally collateral to any factual or legal questions addressed by the MSPB with respect to employment decision covered under the CSRA, even

17

"specific regulations on agency conduct in collective bargaining" and "at least one claim properly within the unquestioned jurisdiction of the MSPB or FLRA"), from the type of "wholly collateral" challenge to OPM action at issue there (and now here) is persuasive. *AFGE,* 139 F.4th at 1031.

To the extent that D.C. Circuit caselaw is construed as expanding the implied *Thunder Basin* doctrine to preclude judicial review of all claims related to labor-management issues, regardless of whether any administrative agency could ever hear those claims, this Court need not and should not follow that lead.[8] Congress created the right of action and the remedy under the APA and required the District Court to exercise that jurisdiction, and that directive should not be erased by implication. It defies credulity to conclude that the Congress that enacted the CSRA, well-aware of the long-standing rule of judicial review under the APA, would have silently foreclosed judicial review of government-wide action purporting to affect every federal employee across all agencies, when that action

---

if the program, policy or rule in question results, directly or indirectly, in employment actions.

[8] The issue of whether claims challenging agency actions that resulted in employee terminations arising from the dismantling of a federal agency (the Consumer Financial Protection Bureau) are impliedly precluded by the CSRA is currently before that Court for *en banc* review. *NTEU v. Vought,* No. 25-5091, 2025 WL 3659406 (D.C. Cir. Dec. 17, 2025).

18

cannot be challenged or set aside in the limited statutory administrative proceedings to which OPM urges Plaintiffs' claims should be channeled.

Finally, this case does not foreclose any Presidential administration from implementing policy objectives in a lawful manner. As the late Justice Rehnquist wrote, "*As long as [an] agency remains within the bounds established by Congress*, it is entitled to assess administrative records and evaluate priorities in light of the philosophy of the administration." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 59 (1983) (Rehnquist, J., concurring in part and dissenting in part) (emphasis added). Here, whatever one thinks of the policy objectives of those now directing the actions of OPM, the federal courts have a mandate to decide whether OPM's actions remain within the bounds established by Congress. OPM sought, by way of the argument accepted by the District Court, to place this administration above and beyond the law, by depriving the separate and equal judicial branch of government of its constitutional role and its statutory responsibility to review the legality of OPM's actions. Congress has affirmatively answered the question whether the District Court had jurisdiction, by way of 28 U.S.C. §1331 and the APA itself, and it is clear it never intended the CSRA to divest the courts of that jurisdiction. This Court should effectuate the judiciary's vital role in the balance of power, by checking the ability of this administration to continuously engage in unlawful acts affecting over two

19

million federal employees. If indeed the Fork Directive is contrary to law (as Plaintiffs have argued), it is well within the Article III courts' power to hold the OPM's actions unlawful under the APA.

## CONCLUSION

*Amici* are well-aware of the critical services that federal employees provide to the American people, and respectfully request that this Court reverse this District Court's jurisdictional ruling and permit Plaintiffs their day in court to challenge this unlawful, arbitrary, and capricious program.

Respectfully submitted,

/s/ Michael R. Keefe

Danielle Leonard (#1220224)
**ALTSHULER BERZON LLP**
177 Post Street, Suite 300
San Francisco, CA 94108
Phone: (415) 421-7151
dleonard@altber.com

James A.W. Shaw (#1133611)
Michael R. Keefe (#1177271)
**SEGAL ROITMAN, LLP**
33 Harrison Avenue, 7th Floor
Boston, MA 02111
Phone: (617) 742-0208
jshaw@segalroitman.com
mkeefe@segalroitman.com

Dated: February 26, 2026

Norman L. Eisen, (#1216645)
Craig Becker (#63646)
**DEMOCRACY DEFENDERS FUND**
600 Pennsylvania Avenue SE #15180
Washington, D.C. 20003
Tel: (202) 594-9958
Norman@democracydefenders.org
Craig@democracydefenders.org

Hon. Nancy Gertner (Ret.) (#16334)
William W. Fick (#82686)
**FICK & MARX LLP**
24 Federal Street, 4th Floor
Boston, MA 02110
Phone: (857) 321-8360
ngertner@fickmarx.com

20

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMIT**

1.     This document complies with the type-volume limits of Fed. R. App. P. 32(a)(7) and Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by the Fed. R. App. P. 32(f), this document contains 4,819 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

<u>/s/ Michael R. Keefe</u>

Dated: February 26, 2026        Michael R. Keefe

**CERTIFICATE OF SERVICE**

I certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: February 26, 2026

/s/ Michael R. Keefe
Michael R. Keefe

22