No. 25-1959

# In the United States Court of Appeals for the First Circuit

_____

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC.,

Plaintiffs-Appellants,

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, Local 3707,

Plaintiff,

v.

SCOTT KUPOR, in the official capacity as Director of the Office of Personnel Management; OFFICE OF PERSONNEL MANAGEMENT,

Defendants-Appellees.

_____

On Appeal from the United States District Court for the District of Massachusetts Case No. 1:25-cv-10276-GAO Hon. George A. O'Toole, Jr., Judge

_____

**PLAINTIFFS-APPELLANTS OPENING BRIEF**

_____

Counsel for Plaintiffs-Appellants
*[Additional Counsel on following page]*

KEKER, VAN NEST & PETERS
LLP
CODY S. HARRIS
BAILEY W. HEAPS
CHRISTINE ZALESKI
NIALL M. FRIZZELL
CHARLOTTE J. KAMAI
633 Battery Street
San Francisco, California 94111
Telephone: 415 391 5400
Facsimile:  415 397 7188

DEMOCRACY FORWARD
FOUNDATION
ELENA GOLDSTEIN
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
Facsimile: (202) 796-4426

AMERICAN FEDERATION
OF GOVERNMENT
EMPLOYEES, AFL-CIO
RUSHAB B. SANGHVI
80 F Street N.W.
Washington, D.C. 20001
Telephone: (202) 639-6426
Facsimile: (202) 329-2928

AMERICAN FEDERATION
OF STATE, COUNTY, AND
MUNICIPAL EMPLOYEES,
AFL-CIO
MATTHEW S. BLUMIN
1625 L Street N.W.
Washington, D.C. 20036
Telephone: (202) 775-5900
Facsimile: (202) 452-0556

Counsel for Plaintiff-Appellant
American Federation of
Government Employees, AFL-
CIO and Local 3707

Counsel for Plaintiff-Appellant
American Federation of State,
County, and Municipal
Employees, AFL-CIO

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, each plaintiff-appellant that is a nongovernmental corporation hereby identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states there is no such corporation.

1.    American Federation of Government Employees, AFL-CIO has no parent corporation and has no stock or stockholders, so no publicly held corporation owns 10% or more of its stock.

2.    American Federation of State, County and Municipal Employees, AFL-CIO has no parent corporation and has no stock or stockholders, so no publicly held corporation owns 10% or more of its stock.

3.    National Association of Government Employees, Inc., has no parent corporation and has no stock or stockholders, so no publicly held corporation owns 10% or more of its stock.

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................ 1

STATEMENT OF JURISDICTION ........................................................ 3

ISSUES PRESENTED FOR REVIEW .................................................... 3

STATEMENT OF THE CASE .................................................................. 4

SUMMARY OF ARGUMENT ................................................................ 11

STANDARD OF REVIEW ...................................................................... 12

ARGUMENT ............................................................................................ 12

I.    The District Court erred by concluding that the CSRA
      and FSLMRS impliedly stripped the court of jurisdiction
      to hear the Unions' claims against OPM. ...................................... 12

      A.    Channeling the Unions' claims would foreclose all
            meaningful judicial review. ................................................... 19

      B.    The Unions' claims for relief are wholly collateral to
            the remedial schemes under the CSRA and
            FSLMRS. ................................................................................ 24

      C.    The Unions' APA and *ultra vires* claims are outside
            the MSPB's and FLRA's expertise. ...................................... 28

II.   The Unions have standing to bring their claims ........................... 30

      A.    The Unions have associational standing. .............................. 31

            1.    The Unions' members would have standing in
                  their own right. ............................................................. 31

            2.    The interests at stake are germane to the
                  Unions' purpose. ........................................................... 35

ii

3.    Individual members' participation is unnecessary....................................................................35

B.    The Unions have organizational standing. ...........................37

CONCLUSION......................................................................................42

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT....................................................................................................45

ADDENDUM.......................................................................................46

CERTIFICATE OF SERVICE ..........................................................116

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AFGE v. Trump*,
   139 F.4th 1020 (9th Cir. 2025) ..................................................*passim*

*AFGE v. Trump*,
   784 F. Supp. 3d 1316 (N.D. Cal. 2025), *aff'd*, 139 F.4th
   1020 (9th Cir. 2025) ............................................................. 16

*AFGE v. Trump*,
   929 F.3d 748 (D.C. Cir. 2019)............................................... 29

*AFGE v. U.S. Dep't of Educ.*,
   No. 25-cv-3553 (CRC), 2025 WL 3123707 (D.D.C. Nov. 7,
   2025)..................................................................................... 18

*AFGE v. U.S. Off. of Pers. Mgmt.*,
   771 F. Supp. 3d 1127 (N.D. Cal. 2025) ........................*passim*

*AFGE v. U.S. Off. of Pers. Mgmt.*,
   799 F. Supp. 3d 967 (N.D. Cal. 2025) ................................. 18

*AFGE v. U.S. OPM*,
   781 F. Supp. 3d 920 (N.D. Cal., 2025) ..........................20, 38

*AFSCME v. U.S. Off. of Mgmt. & Budget*,
   No. 25-CV-08302-SI, 2025 WL 3018250 (N.D. Cal. Oct. 28,
   2025)..................................................................................... 18

*Am. Libr. Ass'n v. Sonderling*,
   783 F. Supp. 3d 57 (D.D.C. 2025)........................................ 40

*Arch Coal, Inc. v. Hugler*,
   242 F. Supp. 3d 13 (D.D.C. 2017), *aff'd sub nom. Arch
   Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. 2018)............ 25

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
   598 U.S. 175 (2023) (Gorsuch, J., concurring) ............*passim*

iv

*Bowen v. Michigan Acad. of Fam. Physicians*,
476 U.S. 667 (1986) .................................................................. 14, 15

*Buck v. Am. Airlines, Inc.*,
476 F.3d 29 (1st Cir. 2007) ............................................................ 13

*Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Rels.
Auth.*,
464 U.S. 89 (1983) ......................................................................... 10

*Citizens of Karst, Inc. v. U.S. Army Corps of Eng'rs*,
160 F. Supp. 3d 451 (D.P.R. 2016) ................................................ 41

*Dantzler, Inc. v. Empresas Berrios Inventory & Operations,
Inc.*,
958 F.3d 38 (1st Cir. 2020) ................................................30, 32, 37

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ................................................................. 27, 28

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
591 U.S. 1 (2020) .......................................................................... 27

*Does 4, 7, 22, 27, 28, & 29 v. Musk*,
No. 25-0462-TDC, 2025 WL 2346258 (D. Md. Aug. 13,
2025).............................................................................................. 18

*Elev8 Baltimore, Inc. v. Corp. for Nat'l & Cmty. Serv.*,
804 F. Supp. 3d 524 (D. Md. 2025)................................................ 18

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) ............................................................... 19, 28, 29

*Feds for Med. Freedom v. Biden*,
63 F.4th 366 (5th Cir. 2023), *cert. granted, judgment
vacated on other grounds*, 144 S. Ct. 480 (2023)
........................................................................................20, 21, 27

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
110 F.4th 295 (1st Cir. 2024)......................................................... 31

v

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ...................................................................... 33, 38

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ........................................................... *passim*

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................................. 38

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ............................................................ 31, 40

*Immigrant Defs. L. Ctr. v. Noem*,
  145 F.4th 972 (9th Cir. 2025) ............................................. 39, 40

*Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO by
  Negron v. Union De Carpinteros De P.R.*,
  615 F. Supp. 3d 87 (D.P.R. 2022) ............................................ 40

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................. 30

*Massachusetts v. United States Dep't of Health & Hum.
  Servs.*,
  923 F.3d 209 (1st Cir. 2019) ................................................... 30

*McNary v. Haitian Refugee Ctr., Inc.*,
  498 U.S. 479 (1991) ............................................................ 24, 25

*Nairne v. Landry*,
  151 F.4th 666 (5th Cir. 2025) ................................................. 39

*Nat'l Mining Ass'n v. Chao*,
  160 F. Supp. 2d 47 (D.D.C. 2001), *aff'd in part, rev'd in
  part sub nom. Nat'l Min. Ass'n*, 292 F.3d 849 ..................... 26

*Nat'l Mining Ass'n v. Dep't of Labor*,
  292 F.3d 849 (D.C. Cir. 2002) .............................................. 25, 26

*Nat'l Treasury Emps. Union v. Devine*,
  577 F. Supp. 738 (D.D.C. 1983), *aff'd*, 733 F.2d 114 (D.C.
  Cir. 1984) ........................................................................................ 26

*Nat'l Treasury Emps. Union v. Helfer*,
  53 F.3d 1289 (D.C. Cir. 1995) .......................................................... 27

*Nat'l Treasury Emps. Union v. Newman*,
  768 F. Supp. 8 (D.D.C. 1991) ........................................................... 41

*Nat'l Treasury Emps. Union v. Whipple*,
  636 F. Supp. 2d 63 (D.D.C. 2009) ..................................................... 26

*New York v. Kennedy*,
  155 F. 4th 67 (1st Cir. 2025) ................................................. 17, 18, 27

*New York v. McMahon*,
  784 F. Supp. 3d. 311(D. Mass. 2025) ................................................ 16

*NLRB v. N. Mountain Foothills Apartments*,
  157 F. 4th 1089 (9th Cir. 2025) ........................................................ 18

*Nulankeyutmonen Nkihtaqmikon v. Impson*,
  503 F.3d 18 (1st Cir. 2007) ..................................................... 31, 32, 40

*OCONUS DOD Emp. Rotation Action Grp. v. Cohen*,
  144 F. Supp. 2d 1 (D.D.C. 2000) ...................................................... 26

*Pharm. Care Mgmt. Ass'n v. Rowe*,
  429 F.3d 294 (1st Cir. 2005) ............................................................. 36

*R.I. Dep't of Env't Mgmt. v. United States*,
  304 F.3d 31 (1st Cir. 2002) ............................................................... 13

*Reddy v. Foster*,
  845 F.3d 493 (1st Cir. 2017) ............................................................. 12

*Republican Nat'l Comm. v. N. Carolina State Bd. of
  Elections*,
  120 F.4th 390 (4th Cir. 2024) ........................................................... 39

*Rivera-Vega v. ConAgra, Inc.,*
   70 F.3d 153 (1st Cir. 1995) ................................................................ 40

*Serv. Emps. Int'l Union Loc. 200 United v. Trump,*
   420 F. Supp. 3d 65 (W.D.N.Y. 2019) ................................................. 26

*Sugar Cane Growers Co-op. of Fla. v. Veneman,*
   289 F.3d 89 (D.C. Cir. 2002) ............................................... 32, 33, 34, 35

*Thunder Basin Coal Co. v. Reich,*
   510 U.S. 200 (1994) ................................................................... *passim*

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ............................................................... 34, 41

*Trump v. AFGE,*
   145 S. Ct. 2635 (2025) ............................................................ 17

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.,*
   517 U.S. 544 (1996) ............................................................... 36

*Warth v. Seldin,*
   422 U.S. 490 (1975) ............................................................... 37

*Wash. State Ass'n of Head Start & Early Childhood Assistance & Educ. Program v. Kennedy,*
   No. C25-781-RSM, 2026 WL 35858 (W.D. Wash. Jan. 6, 2026) ............ 18

*Widakuswara v. Lake,*
   779 F. Supp. 3d 10 (D.D.C. 2025) ............................................ 16, 38

**Federal Statutes**

5 U.S.C. § 301 ......................................................................... 7

5 U.S.C. § 302 ......................................................................... 7

5 U.S.C. § 553 ................................................................... 21, 33

5 U.S.C. § 554 ........................................................................ 21

5 U.S.C. § 555 ................................................................................ 21

5 U.S.C. § 556 ................................................................................ 21

5 U.S.C. § 557 ................................................................................ 21

5 U.S.C. § 558 ................................................................................ 21

5 U.S.C. § 559 ................................................................................ 21

5 U.S.C. § 1101 ................................................................................ 7

5 U.S.C. § 1102 ................................................................................ 7

5 U.S.C. § 1103 ................................................................................ 7

5 U.S.C. § 1104 ................................................................................ 7

5 U.S.C. § 1105 ................................................................................ 7

5 U.S.C. § 1214 .............................................................................. 20

5 U.S.C. § 2302 .................................................................. 10, 19, 21

5 U.S.C. § 3101 ................................................................................ 7

5 U.S.C. § 3502 ................................................................................ 7

5 U.S.C. § 3521 *et seq.* ...................................................................... 7

5 U.S.C. §§ 7101–35 ...................................................................... 10

5 U.S.C. § 7103(a)(11) .................................................................... 23

5 U.S.C. § 7105 .............................................................................. 23

5 U.S.C. § 7105(a)(2) ...................................................................... 23

5 U.S.C. § 7111 .............................................................................. 22

5 U.S.C. § 7114 ........................................................................ 22, 37

5 U.S.C. § 7116 .............................................................................. 22

ix

5 U.S.C. § 7117 ................................................................................. 22, 23

5 U.S.C. § 7118 ...................................................................................... 23

5 U.S.C. § 7121 ...................................................................................... 22

5 U.S.C. § 7512 ........................................................................... 10, 19, 21

5 U.S.C. § 7513 ................................................................................ 19, 20

5 U.S.C. § 7701 ................................................................................ 19, 20

28 U.S.C. § 1291 ...................................................................................... 3

28 U.S.C. § 1331 ...................................................................................... 3

Administrative Procedure Act, 5 U.S.C. §§ 701, et seq ................... *passim*

Civil Service Reform Act of 1978 .................................................... *passim*

## Rules

Fed. R. Civ. Proc. 54 ............................................................................... 3

## Regulations

5 C.F.R. pt. 351 *et seq.* ........................................................................... 7

## REASONS WHY ORAL ARGUMENT SHOULD BE HEARD

Appellants believe oral argument should be heard in this case due to the important legal issues presented. The channeling question has affected many district courts within this Circuit, particularly in the last year. It has also repeatedly (and increasingly) arisen in courts across the country. Given its impact and nuances, and to best aid the Court in reaching a decision on this and other issues, Appellants respectfully request oral argument.

## PRELIMINARY STATEMENT

Plaintiffs-Appellants American Federation of Government Employees, AFL-CIO ("AFGE"), American Federation of State, County, and Municipal Employees, AFL-CIO ("AFSCME"), and the National Association of Government Employees ("NAGE") (collectively, the "Unions") appeal from the District Court's Order dismissing the Unions' challenge to the Defendant-Appellee United States Office of Personnel Management's ("OPM") chaotic creation and rollout of a mass-resignation program that used thinly veiled threats to encourage nearly every federal worker to quit all at once. The Unions plausibly alleged that OPM's so-called "Fork Directive" was promulgated in violation of the Administrative Procedure Act ("APA") and is *ultra vires*.

In its eight-sentence order dismissing the case, the District Court declined to reach the merits, holding instead that the Unions' claims were impliedly channeled to administrative adjudication under the Civil Service Reform Act of 1978 ("CSRA")—created to adjudicate individual personnel issues between employees and their employing agencies—and the Federal Service Labor-Management Relations Statute ("FSLMRS")—contained within the CSRA, which provides for the

1

adjudication of labor relations issues between unions and the employing agencies of union members. That was error. The Unions' APA and *ultra vires* claims do not touch on the individual personnel actions or labor-management relations disputes within the scope of the CSRA or FSLMRS. Channeling those claims is improper under the controlling test in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), because the administrative agencies lack any relevant expertise and offer no meaningful forum for judicial review of the Unions' claims for government-wide relief, which are wholly collateral to the CSRA and FSLMRS's review schemes. In holding otherwise, the District Court impermissibly expanded the reach of the narrow implied jurisdiction stripping doctrine and contravened the substantial weight of authority.

The District Court also erred in holding that the Unions lacked standing. The Amended Complaint asserts two bases for standing: (1) associational standing based on injuries to Union members who suffered reputational harm and diminished prospects at work as a result of the Fork Directive; and (2) organizational standing based on injuries to the Unions, which were put in the impossible position of attempting to adequately advise their members about the opaque and

2

ever-shifting program, harming their reputation and diverting their resources from their core functions. The District Court failed to accept as true those well-pleaded allegations and drew inferences against the Unions, failing even to acknowledge the Unions' allegations supporting associational standing.

The Unions are entitled to their day in court. The District Court's ruling should be reversed.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction under 28 U.S.C. § 1331, because the action arises under federal law under the Administrative Procedure Act, 5 U.S.C. §§ 701, et seq, and for the reasons set forth below. This Court has appellate jurisdiction under 28 U.S.C. § 1291, because the District Court entered final judgment under Federal Rule of Civil Procedure 54, dismissing all claims with prejudice on September 24, 2025. A180-81, A182. The Unions timely appealed on October 7, 2025. A183.

## ISSUES PRESENTED FOR REVIEW

Whether the District Court has jurisdiction to hear APA and *ultra vires* challenges to a government-wide deferred resignation program

3

carried out by a centralized federal agency, acting in its role as administrator of government-wide policies, not as the employer of affected workers?

Whether the Unions adequately alleged associational standing based on the injuries to their members and/or organizational standing based on their own injuries?

## STATEMENT OF THE CASE

The Unions plausibly alleged the following facts in their Amended Complaint, which the District Court was required to accept as true in deciding the government's motion to dismiss.

On January 28, 2025, without any prior notice, OPM, the chief human resources agency for the federal government, sent an unprecedented email directly to nearly every federal employee, entitled "Fork in the Road" ("Fork Directive"). A126-28 ¶ ¶ 33, 46. The OPM email announced a "deferred resignation" program for all recipients, mimicking a program of the same name created and executed by Elon Musk—who, in January 2025, was running the Department of Government Efficiency and strongly influencing OPM and its actions— while he was simultaneously leading Twitter (now "X"). *Id.* at 140 ¶ 91.

4

Musk's Twitter program was widely regarded as chaotic and inefficient. *Id.* ¶ 90. It fared no better in the public sector.

OPM's program purported to allow federal employees who opted in to stop performing any work for their employing agencies, but to continue receiving pay through September 30, 2025. *Id.* at 128-29 ¶¶ 46-47. All employees had to do was reply to OPM's email with the word "RESIGN" within nine days. *Id.* at 128-29, 142, 146 ¶¶ 47, 49, 101, 119. In addition to the short-fuse timeline, the email contained not-so-subtly veiled threats of early termination for employees who failed to accept the deferred resignation program. *Id.* at 129-30 ¶¶ 50–52. OPM's threats were designed to and did make employees feel helpless, scared, anxious, and confused, intimidating them into making life-altering professional and personal decisions under time pressure without clear answers to fundamental questions about the program. *Id.* at 119-30, 150-53 ¶¶ 5-52, 132–37.

And their questions abounded. The program's guidelines were unclear, and OPM provided conflicting information about employees' rights and obligations if they accepted the offer. *Id.* at 133-38 ¶¶ 63–81. For example, OPM failed to clearly explain whether and when

5

employees who accepted the Fork Directive might still be required to work, *id.* at 134-36 ¶¶ 67–72, repeatedly revised its FAQs to reflect inconsistent substantive information throughout the sign-up period, *id.* at 133-35 ¶¶ 64–67, 72, and left federal employees' questions unanswered, *id.* at 136-37 ¶¶ 73, 75–76, 78. OPM repeatedly shifted its stance on which workers were eligible. *Id.* at 131-132 ¶¶ 57–60. Federal workers were left in the dark about whether the Fork Directive was even lawful. *Id.* at 136-37 ¶ 74, 79.

The Fork Directive was solely an OPM program. It was designed, implemented, and executed exclusively by OPM. *Id.* at 144-45 ¶¶ 112–14. No other agency provided pre-rollout input about factors to consider, ideal staffing levels, timing, eligibility, or the impact on the agency's services. *Id.* at 144 ¶ 112. The implementing email completely bypassed employing agencies: it did not originate from employing agencies, employees were not instructed to respond to their employing agencies, and it is unclear that employees *could* accept the Directive by responding to their employing agencies, even if they wanted to. *Id.* at 129 ¶ 47. OPM instructed how and when to respond to the email. *Id.* at 129, 145 ¶¶ 47, 49, 113. And only OPM could answer questions about

6

the program (to the extent that it did at all). *Id.* at 145 ¶ 114. No agency other than OPM could update the Fork Directive's FAQs. *Id.* No other agency could change the Directive during its execution. *Id.* And no other agency could provide support to its employees about the Fork Directive during the rollout. *Id.*

OPM had no statutory authority to create or impose such a program or to alter the employment relationship between federal employees and their employing agencies. *Id.* at 127-28 ¶¶ 39–43. Specifically, Congress vested federal agencies and their heads with the authority to employ, regulate, and manage the agency's federal employees (*see* 5 U.S.C. §§ 301–302, 3101), not OPM (*see* 5 U.S.C. §§1101-1105). OPM created and implemented this Directive without complying with statutes governing voluntary employee departures (*see* 5 U.S.C. § 3521 *et seq.*) or statutes and regulations governing reductions in force (*see* 5 U.S.C. §3502; 5 C.F.R. Part 351 *et seq.*). OPM also failed to explain whether and how it had complied with ethics regulations, *id.* at 138-39 ¶¶ 83–87, or why it could create and implement this program without any appropriated funding, *id.* at 146-48 ¶¶ 117–24. Moreover, in enacting the Fork Directive, OPM failed to consider numerous

7

critical factors, such as who ought to be eligible and what the adverse consequences to the government would be by providing a termination program to millions of federal employees at once. *Id.* at 131-33 ¶¶ 55-61. OPM's rash implementation of the Fork Directive, imposing ever-shifting rules and a random deadline, is the textbook definition of an arbitrary and capricious action. *Id.* at 139-40, 142-43 ¶¶ 89–90, 101–05.

Plaintiffs-Appellants are three public-sector unions that collectively represent more than 800,000 federal civil servants. *Id.* at 122 ¶ 18. Their members work across a broad spectrum of federal agencies and live and work in all 50 states and the District of Columbia. *Id.* at 154-55 ¶¶ 147–50. The chaotic implementation of the Fork Directive has substantially harmed the employees the Unions represent. Among other things, employees represented by the Unions were prevented from making informed or reasoned decisions, while being forced to choose between an apparently lawless and unfunded program and the threat of termination. *Id.* at 129-30, 131-32, 133-41, 142-44, 146-47, 148, 150-53 ¶¶ 48–54, 57–59, 63–93, 102–05, 108–11, 120–22, 125, 132–37. By ignoring the APA, OPM gave the Unions and the employees they represent no ability to consider and comment on the

8

program before it was announced. *Id*. 129-30 ¶¶ 48–54. And those who chose or felt compelled to join the program were routinely denied the benefits they were promised, suffering pecuniary, reputational, and emotional harm in the process. *Id*. at 131-32, 148-53 ¶¶ 57–59, 125–37.

The Unions were harmed in their own right, as well. One of the Unions' core functions is to counsel members about the terms of their employment. *Id*. at 159-61 ¶¶ 175, 187. But by constantly shifting the contours of the Fork Directive, OPM frustrated the Unions' efforts to adequately advise members about their rights. *Id*. at 159-61 ¶¶ 175-187. The Unions spent a substantial amount of time and resources attempting to respond to inquiries—diverting time and resources from other core components of their mission—but OPM's lack of guidance hindered their efforts. *Id*. at 161 ¶¶ 188. When the Unions necessarily left members' questions unanswered (because there were no answers), the Unions suffered reputational injury both with their members and with federal employees more broadly. *Id*. at 161-62 ¶ 189.

To stop OPM's lawless implementation of this hugely consequential program, the Unions filed this case on February 4, 2025—two days before the deadline for members to accept or reject the

Fork Directive—and promptly moved for a temporary restraining order. A009. In response, the District Court stayed the February 6 deadline, pending further proceedings on the motion for a temporary restraining order. A183-84. On February 12, 2025, the District Court issued an Opinion and Order dissolving the temporary restraining order on the grounds that the Unions lacked organizational standing and that Congress had impliedly precluded the District Court from exercising jurisdiction over the claims through the FSLMRS and CSRA, of which the FSLMRS is a part.[1] A114-16.

The Unions amended their complaint, adding new allegations and asserting associational standing as an alternative basis for standing. A117. Defendants moved to dismiss. A021. In an eight-sentence order,

---

[1] As discussed below, the Civil Service Reform Act of 1978 provides a mechanism for federal employees to adjudicate individual personnel complaints against their employing agencies before the Merit Systems Protection Board. 5 U.S.C. §§ 2302, 7512. The Federal Service Labor-Management Relations Statute is set forth in Title VII of the CSRA. The FSLMRS establishes a framework to govern collective bargaining for federal government employees. *See* 5 U.S.C. §§ 7101–35. Under the FSLMRS, the Federal Labor Relations Authority "adjudicates negotiability disputes, unfair labor practice complaints, bargaining unit issues, arbitration exceptions, and conflicts over the conduct of representational elections." *Bureau of Alcohol, Tobacco & Firearms v. Fed. Lab. Rels. Auth.*, 464 U.S. 89, 93 (1983).

the District Court dismissed the Amended Complaint with prejudice, relying entirely on "the reasons previously articulated by the Court in its prior Opinion and Order," and noting there was "no need for a discussion." A180-81. The District Court failed to address the new allegations and new bases for standing set forth in the Amended Complaint. *Id.*

## SUMMARY OF ARGUMENT

The District Court erred in holding that it lacked jurisdiction to hear the Unions' claims in two ways.

***First***, the Court erred in holding that, under *Thunder Basin*, the CSRA impliedly precludes District Court jurisdiction. There is no reason to conclude that Congress intended to silently divest district courts of jurisdiction to hear a challenge to a government-wide OPM program by creating administrative agencies that *cannot* hear claims against agencies not acting as employers. Nor did Congress intend to preclude federal jurisdiction over APA and *ultra vires* claims that have nothing to do with the individual personnel actions or labor disputes covered by the CSRA and FSLMRS. No Supreme Court case or case from this Circuit has ever expanded *Thunder Basin's* implied preclusion

11

doctrine as capaciously as the District Court did here. This Court should not endorse that radical approach.

*Second*, the Unions have both associational and organizational standing. The Amended Complaint plausibly alleges that the Fork Directive's lawless and chaotic rollout caused the Unions and the employees they represent to suffer pecuniary, reputational and other harm. In holding otherwise, the Court impermissibly ignored the Unions' well-pleaded allegations and improperly drew inferences against the Unions.

## STANDARD OF REVIEW

This Court reviews the District Court's dismissal for lack of jurisdiction *de novo. Reddy v. Foster*, 845 F.3d 493, 501 (1st Cir. 2017).

## ARGUMENT

I. **The District Court erred by concluding that the CSRA and FSLMRS impliedly stripped the court of jurisdiction to hear the Unions' claims against OPM.**

Misapplying the Supreme Court's holding in *Thunder Basin*, the District Court erroneously concluded that it lacked jurisdiction to hear the Union's claims and that those claims must be channeled to administrative review under the CSRA and FSLMRS. In so ruling, the

12

District Court radically expanded the doctrine of implied jurisdiction stripping far beyond the narrow context in which it is appropriate. The District Court also ignored the rapidly developing case law the Unions cited that denied government requests to channel claims similar to those asserted here. Properly applied, the controlling test in *Thunder Basin* directs the District Court to retain jurisdiction over the Unions' APA and *ultra vires* claims challenging the government-wide Fork Directive.

This Circuit begins with a legal presumption the District Court ignored:  there is a "strong presumption that Congress intends judicial review of administrative action." *R.I. Dep't of Env't Mgmt. v. United States*, 304 F.3d 31, 41 (1st Cir. 2002). That presumption is especially important here, where the issue is whether a doctrine of *implied* jurisdiction stripping prevents the Unions from bringing their claims in federal court. *See Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 37 (1st Cir. 2007) (stating the Supreme Court has "devoted [many] decades to cabining" such doctrines). Only under unusual circumstances do courts find that Congress intended to "[d]ivest[] jurisdiction by mere implication." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 208

13

(2023) (Gorsuch, J., concurring); *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986) ("[J]udicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."). Instead, when Congress wants to channel claims to agency review, "it does not ask [courts] to juggle a variety of factors and then guess at the implicit intentions of legislators past. It simply tells us." *Axon*, 598 U.S. at 208 (Gorsuch, J., concurring).

Notwithstanding that presumption, courts have recognized that under certain limited circumstances, jurisdiction may be impliedly precluded by statute. The Supreme Court's decision in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) provides the standard for implied preclusion, but the Supreme Court has repeatedly advised courts to apply that doctrine cautiously, as statutory schemes for agency review do "not necessarily extend to every claim concerning agency action." *Axon*, 598 U.S. at 185; *id.* at 205 ("There are many problems with the *Thunder Basin* project.") (Gorsuch, J., concurring); *see also Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490–91 (2010) (refusing to channel plaintiffs' constitutional claims to agency review).

14

The central questions under *Thunder Basin* are whether the "'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" *Free Enter. Fund.,* 561 U.S. at 489. On the first question, here, there is nothing in the CSRA or FSLMRS that evinces Congress's intent to channel APA and *ultra vires* claims to a government-wide program brought against an agency not acting as an employer. Given that silence and for all the reasons below, the answer to the first question is "no."

To assist in answering the second question whether the Unions' claims are the type Congress intended to channel to administrative review, courts weigh three factors, none of which is dispositive, asking whether (i) precluding district court jurisdiction would "foreclose all meaningful judicial review;" (ii) the claim is "wholly collateral to [the] statute's review provisions;" and (iii) the claim is "outside the agency's expertise." *Axon Enter.,* 598 U.S. at 186. As the Supreme Court explained most recently in *Axon Enterprises*: "The first *Thunder Basin* factor recognizes that Congress rarely allows claims about agency action to escape effective judicial review." *Id.* (citing *Bowen,* 476 U.S. at

15

670). And "[t]he second and third reflect in related ways the point of special review provisions—to give the agency a heightened role in the matters it customarily handles, and can apply distinctive knowledge to." *Id.*

In the last year, numerous courts across the country have applied *Thunder Basin* to actions of the current Administration, finding that district courts have jurisdiction to hear cases relating to similar APA and *ultra vires* claims, government-wide actors (including OPM), and government-wide directives to those at issue here.[2] For example, in *AFGE v. Trump*, the Ninth Circuit affirmed the lower court's decision granting the plaintiff unions'—two of the appellants here—motion for preliminary injunction. 139 F.4th 1020, 1033 (9th Cir. 2025). The court correctly held that, under *Thunder Basin,* the unions' APA and *ultra vires* claims challenging a government-wide Executive Order

---

[2] The Unions cited many of these examples in their Opposition to Defendants' Motion to Dismiss, ECF 102 at 7, 9-16, all of which the District Court ignored. *See, e.g.*, *AFGE v. U.S. Off. of Pers. Mgmt.* ("*OPM I*"), 771 F. Supp. 3d 1127 (N.D. Cal. 2025); *AFGE v. Trump*, 784 F. Supp. 3d 1316 (N.D. Cal. 2025), *aff'd*, 139 F.4th 1020 (9th Cir. 2025); *Widakuswara v. Lake*, 779 F. Supp. 3d 10 (D.D.C. 2025); *New York v. McMahon*, 784 F. Supp. 3d. 311(D. Mass. 2025) (favorably citing *OPM I* and *Widakuswara*).

16

implemented by the Office of Management and Budget ("OMB") and OPM that forced federal agencies to "initiate large-scale reductions in force" should not be channeled under the CSRA. *Id.* The court explained that "the CSRA does not allow for review of Plaintiffs' constitutional and statutory claims at all," and therefore, the court concluded, it was "unlikely that Congress intended for the CSRA to preclude review for parties not even covered by that statute who allege claims outside the [CSRA administrative fora's] jurisdiction." *Id.* That case is directly on point.

The Supreme Court later stayed the preliminary injunction at issue in *AFGE v. Trump* on the grounds that the Executive Order, OMB and OPM actions at issue were "likely" lawful. *Trump v. AFGE*, 145 S. Ct. 2635 (2025) (mem). That order's clear implication, as this Court held in *New York v. Kennedy*, is that "the Supreme Court likely decided that the CSRA did *not* funnel the dispute at issue . . . to the MSPB." 155 F. 4th 67, 75 (1st Cir. 2025). *Trump v. AFGE* and *New York v. Kennedy* control the outcome here. Those cases are consistent with numerous

17

other cases that have reached similar conclusions in the last year.[3] No Supreme Court authority has held otherwise. *See New York v. Kennedy*, 155 F. 4th at 74 ("[N]or has any other Supreme Court interim order or decision accepted the government's CSRA argument in a like case.").

Consistent with that recent authority, here all *Thunder Basin* factors weigh in favor of finding district court jurisdiction. First, channeling APA and *ultra vires* claims challenging the Fork Directive would preclude meaningful judicial review because the relevant administrative agencies, the Merit Systems Protection Board ("MSPB")—under the CSRA—and the Federal Labor Relations Authority ("FLRA")—under the FSLMRS—cannot adjudicate these

---

[3] *See, e.g.*, *Wash. State Ass'n of Head Start & Early Childhood Assistance & Educ. Program v. Kennedy*, No. C25-781-RSM, 2026 WL 35858, at *6 (W.D. Wash. Jan. 6, 2026) (finding that neither the CSRA nor FSLMRS channels challenges to mass layoffs and agency restructuring); *AFSCME v. U.S. Off. of Mgmt. & Budget*, No. 25-CV-08302-SI, 2025 WL 3018250 (N.D. Cal. Oct. 28, 2025); *AFGE v. U.S. Off. of Pers. Mgmt.*, 799 F. Supp. 3d 967, 977 (N.D. Cal. 2025); *Does 4, 7, 22, 27, 28, & 29 v. Musk*, No. 25-0462-TDC, 2025 WL 2346258 (D. Md. Aug. 13, 2025); *Elev8 Baltimore, Inc. v. Corp. for Nat'l & Cmty. Serv.*, 804 F. Supp. 3d 524 (D. Md. 2025); *see also NLRB v. N. Mountain Foothills Apartments*, 157 F. 4th 1089 (9th Cir. 2025) (no channeling of constitutional challenge to NLRB); *AFGE v. U.S. Dep't of Educ.*, No. 25-cv-3553 (CRC), 2025 WL 3123707 (D.D.C. Nov. 7, 2025) (no channeling of constitutional challenge to out of office messages).

18

claims. Second, the Unions' APA and *ultra vires* claims are "wholly collateral" to those Congress intended to be heard under the CSRA and FSLMRS. And third, the MSPB and FLRA lack any expertise that would assist them in evaluating the Fork Directive's lawfulness. The Unions' claims thus are not "of the type" Congress intended to channel to the CSRA's and FSLMRS's review schemes. *See Axon. Enter.*, 598 U.S. at 186. They belong in the district court.

### A.    Channeling the Unions' claims would foreclose all meaningful judicial review.

The first *Thunder Basin* factor weighs heavily in favor of finding district court jurisdiction because channeling the Unions' claims to the MSPB and FLRA, which can hear only personnel decisions and labor relations issues against employing agencies, would "foreclose all meaningful judicial review." *Id.*

*First*, as to the CSRA: the CSRA's administrative review process is limited to only personnel decisions made by employing agencies. *See* 5 U.S.C. §§ 7513, 7701. The statute contemplates and creates a process for federal workers to challenge "personnel practice[s]" and "adverse action[s]," including decisions about an *individual worker's* promotion, suspension, hiring, and the like. 5 U.S.C. §§ 2302, 7512; *see Elgin v.*

19

*Dep't of Treasury,* 567 U.S. 1, 11-13 (2012) (holding that the CSRA applies to covered employees' challenges of "adverse personnel actions"). The CSRA contemplates that any action challenged by a worker was taken by the worker's employing agency. *See, e.g.,* 5 U.S.C. § 7513 ("*[A]n agency* may take an action [like suspension or firing] against *an employee* only for [] cause . . . .") (emphasis added); 5 U.S.C. § 7701. The MSPB can review any such action "which is appealable to the Board," *id.* § 7701, meaning personnel actions, 5 U.S.C. §§ 1214(a), (b), 7513, taken by employing agencies. Thus, the CSRA is limited to providing a forum for "covered federal employees *when they are challenging CSRA-covered personnel actions.*" *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 372 (5th Cir. 2023), *cert. granted, judgment vacated on other grounds*, 144 S. Ct. 480 (2023) (emphasis in original).

This lawsuit involves no CSRA-covered personnel action that any employing agency took. The Unions plausibly alleged that the Fork Directive is an *OPM* program because OPM designed, implemented, and executed it, with no input from any agency employer. *See id.* at A144-46 ¶¶ 112–16. The Unions challenge the Fork Directive's *creation* and *execution*, including OPM's astounding failure to even attempt to

20

comply with the APA, 5 U.S.C. §§ 553–59. *See id.* at 168-75 ¶¶ 213–57. Nothing in the CSRA contemplates challenges to such government-wide OPM programs. *See* 5 U.S.C. §§ 2302, 7512. Because the Unions mount no challenge to any employing agency's personnel decision or adverse employment action, the Union's claims lie beyond the CSRA's scope. *See Feds for Med. Freedom*, 63 F. 4th at 372; *see also AFGE*, 139 F.4th at 1031. And because the MSPB lacks the statutory authority to review appeals of such challenges, if their claims were channeled, the Unions would never be able to receive from the MSPB a final appealable order, thus precluding all judicial relief. *See Free Enter. Fund*, 561 U.S. at 490–91; *Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt. ("OPM I")*, 771 F. Supp. 3d 1127, 1133 (N.D. Cal. 2025) (stating where the plaintiff challenges a "government-wide" policy, rather than "'any [one] personnel action,' [the] claims . . . remain[] in district court).[4]

---

[4] In the District Court, the government relied on a host of inapposite cases that properly channeled claims by federal workers suing their employing agencies over personnel actions. Add.001. Those claims differ fundamentally from the Unions' claims here. *See OPM I*, 771 F. Supp. 3d at 1133 (distinguishing cases that "have attacked, substantively or procedurally, one agency's decision about one employee or its own

*Second*, like the CSRA, the FSLMRS encompasses only claims against *employing agencies*. The FSLMRS provides that Collective Bargaining Agreements ("CBAs") between workers and their employers, and Unfair Labor Practices ("ULPs"), brought against employers, are the exclusive source of grievance procedures. *See* 5 U.S.C. § 7121. Here, the Unions' claims are APA and *ultra vires* claims, not CBA grievances, nor ULPs. The FSLMRS does not create a mechanism for the Unions to challenge such government-wide policies of an agency not acting as an employer. Nor is there a way for the FLRA to issue the declaratory and injunctive relief sought to remedy the unlawful implementation of *OPM's* government-wide program.

Moreover, the Unions' claims here fall far outside the FSLMRS's statutory scope, which is limited to creating procedures and rules for labor-management relations. This includes rules about union elections and recognition, 5 U.S.C. § 7111, representation, *id.* § 7114, ULPs by an employing agency or a labor organization, *id.* § 7116, and collective bargaining, *id.* § 7117. Certain decisions made under the FSLMRS can

---

workforce, which are the kinds of claims appellate courts have channeled into the CSRA" from government-wide programs).

22

be appealed to the FLRA. 5 U.S.C. § 7105. But the FLRA is empowered only to issue decisions covered by the statute. *Id.* § 7105 (discussing union elections, criteria for union rights, and labor bargaining issues). Specifically, the FLRA can review only those "'issues relating to the duty to bargain in good faith' and unfair labor practices." *Id.* §§ 7105(a)(2), 7117, 7118.

This detailed statutory scheme evinces Congress's intent to limit the FSLMRS to *labor-management relations.* But the Unions bring no labor-management relations claims. Nor could they; the Fork Directive has nothing to do with regulating or challenging labor rules, union elections, collective bargaining, or grievance procedures.[5] They are thus beyond the statute's scope. *See OPM I*, 771 F. Supp. 3d at 1134.

Because the Unions could not bring these claims against OPM in front of the FLRA, finding that the FSLMRS precludes district court review would "foreclose all meaningful judicial review" of the Unions' claims. *Axon Enter.*, 598 U.S. at 186.

---

[5] Additionally, OPM is not the employer of non-OPM workers for purposes of labor-management relations, *see* 5 U.S.C. § 7103(a)(11).

23

**B.    The Unions' claims for relief are wholly collateral to the remedial schemes under the CSRA and FSLMRS.**

The second *Thunder Basin* factor likewise counsels against channeling, because the relief the Unions seek is wholly collateral to the CSRA's and FSLMRS's review provisions. *See Axon Enter.*, 598 U.S. at 186. The Unions seek to vacate and remand the Fork Directive to allow OPM to perform notice-and-comment rulemaking, as well as declaratory relief that the Directive and any employment-related retaliation against workers for accepting or rejecting the Fork are unlawful. A175 at (A)-(E). Those challenges to the lawfulness of the regulation itself and the procedures under which it was adopted do not seek to address any "specific adverse action" taken by an employer against any individual worker, as contemplated by the CSRA. *AFGE v. Trump*, 139 F.4th at 1030. Nor do they address "'issues relating to the duty to bargain in good faith' and unfair labor practices," as contemplated by the FLRA. *Id.* at 1031. And they do not seek to change any individual employee's employment status, whether part of the Fork Directive or not. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 495 (1991) (declining to channel claims because plaintiff challenged process to

24

apply for benefits under statute, rather than the outcome of the process).

Neither the MSPB nor the FLRA is designed or equipped to hear the claims for government-wide relief that the Unions seek. *See Arch Coal, Inc. v. Hugler*, 242 F. Supp. 3d 13, 19 (D.D.C. 2017), *aff'd sub nom. Arch Coal, Inc. v. Acosta*, 888 F.3d 493 (D.C. Cir. 2018) (notice-and-comment rules applying government-wide with the "force of law" are not suited for individual adjudication); *Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 856 (D.C. Cir. 2002) ("[G]eneric challenges to agency action" are properly asserted in District court). Thus, as the Ninth Circuit held in *AFGE v. Trump,* neither statute confers on the agencies "the authority to address the type of . . . claims raised by [the Unions]." *AFGE v. Trump*, 139 F.4th at 1031 (holding that the FLRA lacks the authority to address APA and *ultra vires* claims).

Courts are clear that non-individualized claims seeking government-wide relief and vacatur of an unlawful regulation fall outside of administrative channeling. *See e.g. McNary*, 498 U.S. at 495. For example, courts have found district court jurisdiction where a plaintiff sought to "prohibit further use of the [challenged] regulation,"

*Nat'l Treasury Emps. Union v. Whipple*, 636 F. Supp. 2d 63, 69 (D.D.C. 2009); where plaintiffs sought to enjoin enforcement of a final rule, *Nat'l Mining Ass'n v. Chao*, 160 F. Supp. 2d 47, 51 (D.D.C. 2001), *aff'd in part, rev'd in part sub nom. Nat'l Min. Ass'n*, 292 F.3d 849; and where plaintiffs sought to "invalidate" a regulation, *OCONUS DOD Emp. Rotation Action Grp. v. Cohen*, 144 F. Supp. 2d 1, 7 (D.D.C. 2000).[6] Similarly, courts have held that challenges to the existence of a rule including based on the constitutionality of the agency itself, *Axon*, 598 U.S. at 180; *Free Enter. Fund*, 561 U.S. at 490–91, and "generic challenges to agency action," *Nat'l Mining Ass'n*, 292 F.3d at 856, are properly asserted in district court.

The issues with channeling such non-individualized claims are even more salient where, as here, the claims arise under the APA. Courts have repeatedly found that notice-and-comment claims similar

---

[6] *See also Nat'l Treasury Emps. Union v. Devine*, 577 F. Supp. 738, 751 (D.D.C. 1983), *aff'd*, 733 F.2d 114 (D.C. Cir. 1984) (district court had jurisdiction where plaintiff sought declaration to void regulations, and injunction preventing their use); *Serv. Emps. Int'l Union Loc. 200 United v. Trump*, 420 F. Supp. 3d 65, 74 (W.D.N.Y. 2019) (finding jurisdiction "plausible" where plaintiffs sought general declaratory and injunctive relief, styled as a "purely procedural APA challenge—that is, a challenge to the process used to adopt a regulation, rather than the content thereof").

to those at issue here "fall outside the scope of the administrative process," because APA claims are not suited for individual adjudication. *AFGE*, 139 F.4th at 1030 (holding that "APA claims plainly fall outside the scope of the CSRA's review provisions."); *see also New York v. Kennedy,* 155 F.4th at 75 (stating that the Supreme Court implicitly affirmed the channeling decision in *AFGE v. Trump*).

For good reason. The Administrative Procedure Act embodies a "basic presumption of judicial review." *Dep't of Com. v. New York*, 588 U.S. 752, 771 (2019). "To honor the presumption of review," the Supreme Court must read any exception to judicial review under the APA, "quite narrowly." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 17 (2020). District courts have long reviewed APA challenges to OPM actions affecting federal employment without channeling the claims. *See Nat'l Treasury Emps. Union v. Helfer*, 53 F.3d 1289, 1295 (D.C. Cir. 1995) (reviewing OPM regulation regarding agency hiring practices); *Feds for Med. Freedom*, 63 F.4th at 378 ("A long line of cases establishes that federal employees can bring facial, pre-enforcement actions against federal policies outside of the CSRA."). While the Supreme Court has twice held that an agency adjudication

statute impliedly precluded district court jurisdiction over certain claims, it has never concluded that such a scheme impliedly precludes any *APA* claims. *Axon Enter.*, 598 U.S. at 186; *see also Free Enter. Fund*, 561 U.S. at 491; *Elgin,* 567 U.S. at 11-13; *Thunder Basin*, 510 U.S. at 216. There is thus no reason to find a novel exception to the APA's "command" of judicial review for the claims at issue here. *Dep't of Com. v. New York*, 588 U.S. at 772.

The relief the Unions seek is thus outside the scope of the CSRA and FSLMRS, and is "wholly collateral" to the remedial schemes created by those statutes.

### C.　The Unions' APA and *ultra vires* claims are outside the MSPB's and FLRA's expertise.

Finally, under the third *Thunder Basin* factor, the Unions' claims are not "intertwined with factual and policy questions that would benefit from the MSPB's or the FLRA's expertise." *OPM I*, 771 F. Supp. 3d at 1132.

The MSPB's expertise in evaluating whether agency personnel actions comport with the requirements of the CSRA is unrelated to whether OPM has statutory authority to create and implement a government-wide policy or whether it must undertake notice and

comment before embarking on such an unprecedented exercise. *See id.*

Similarly, the FLRA's expertise in resolving unfair labor practice claims

and addressing collective bargaining contract disputes has no relation

to whether OPM violated the APA or exceeded its authority. *See id.*

Deciding the Unions' APA and *ultra vires* claims in no sense requires

the district court to address any personnel actions, *see Elgin*, 567 U.S.

at 22–23, or any "employer-agency policy choices that the MSPB or the

FLRA commonly parse," *OPM I*, 771 F. Supp. 3d, at 1132. These

questions are best addressed by the federal courts. *See Axon Enter.*, 598

U.S. at 195.

In reaching the opposite conclusion, the District Court relied

primarily on an out-of-circuit case that had channeled unions' claims to

the FSLMRS. *See AFGE v. Trump*, 929 F.3d 748 (D.C. Cir. 2019).

There, however, the challenges concerned executive orders regarding

collective bargaining and grievance procedures, which the court found

properly within the FSLMRS's scope. *Id.* at 753–56. The Unions assert

no such claims here.

29

## II.   The Unions have standing to bring their claims.

The District Court also erred in its standing analysis. The Unions have both associational and organizational standing.[7] To establish standing, a plaintiff must show

> (1) an injury in fact which is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) that the injury is 'fairly traceable to the challenged action,' and (3) that it is 'likely . . . that the injury will be redressed by a favorable decision.'

*Massachusetts v. United States Dep't of Health & Hum. Servs.*, 923 F.3d 209, 221–22 (1st Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Where, as here, a plaintiff's standing is challenged on the pleadings, "this Court takes all well-pleaded facts in the complaint as true and indulges all reasonable inferences in [the plaintiff's] favor to determine whether it plausibly pleaded facts necessary to demonstrate standing to bring the action." *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 46–47 (1st Cir. 2020) (internal alterations and quotation omitted).

---

[7] The Unions need establish only one kind of standing to bring their claims.

### A.     The Unions have associational standing.

An organization has associational standing to bring claims on behalf of its members where (1) "its members would otherwise have standing in their own right;" (2) "the interests it seeks to protect are germane to the organization's purpose;" and (3) neither the claims nor requested relief requires participation of individual members. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 110 F.4th 295, 308 (1st Cir. 2024); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The Unions meet each requirement.

### 1.     The Unions' members would have standing in their own right.

The Unions' members have suffered myriad concrete injuries that are traceable to OPM's conduct and redressable by the district court. *See Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 27 (1st Cir. 2007). The Amended Complaint pleads three categories of injuries that the Unions' members suffered.

*First*, members were harmed by their inability to provide input, via notice and comment, on the Fork Directive's design and implementation. A129-30 ¶¶ 48–54. The result was an unreasoned and self-contradictory program that forced members to choose between an

31

apparently lawless and unfunded program and the threat of

termination. *Id.* at 133-41, 142-43, 146-48 ¶¶ 63–93, 101–05, 120–22.

OPM's failure to engage in notice and comment rulemaking created the

exact confusion and lack of clarity that the APA's notice and comment

procedure is designed to avoid. This Court has held that procedural

relief of the kind the Unions seek gives rise to standing if it could

"prompt the injury-causing party to reconsider the decision."

*Nulankeyutmonen*, 503 F.3d at 28; *see also Sugar Cane Growers Co-op.*

*of Fla. v. Veneman*, 289 F.3d 89, 94–95 (D.C. Cir. 2002) (holding that a

procedural injury gives rise to standing when the "procedural step was

connected to the substantive result"). If Defendants had followed the

APA's notice-and-comment requirements, the Unions and their

members would have provided input regarding the Fork Directive's

scope, implementation, duration, consequences, effects on operations,

ethical considerations, and legality. A138, 141, 143, 148 ¶¶ 82, 93, 105,

124. There is at least a reasonable likelihood that the program resulting

from such considered rulemaking would create less contradiction and

confusion for the Unions' members. That is sufficient for standing. *See*

*Sugar Cane Growers*, 289 F.3d at 95 ("If a party claiming the

32

deprivation of a right to notice-and-comment rulemaking under the APA had to show that its comment would have altered the agency's rule, section 553 would be a dead letter.").

*Second*, the Fork Directive forced members to accept or decline the program based on poor and conflicting information. *Id.* at 129-30, 131-32, 133-41, 142-44, 146-49 ¶¶ 48–54, 57–59, 63–93, 102–05, 108–11, 120–22, 126–37. "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). Under the Fork Directive members had to make a choice: either accept the Directive on a short fuse, based on incomplete information, or decline the Directive and face the possibility of termination. A129-30, 142-46 ¶¶ 47, 49, 50–52, 101, 119. In many cases, members declined simply because they had a number of legitimate and unanswered questions about the program's legality and OPM was unable to provide clear, timely answers. *Id.* at 151-53 ¶¶ 134–36. The obligation to make that uninformed choice gives rise to members' standing.

***Third***, members were denied promised benefits under the program, causing them pecuniary, reputational and emotional harm. *Id.* at 150-51 ¶¶ 132, 133. Several members attempted to accept the Fork Directive under the terms on which it was offered; however, after providing their acceptance they were told that they were ineligible for the program. *Id.* Those members suffered anxiety and other emotional harm, reputational harm, and reasonably feared retaliation, including diminished prospects for future promotions and performance awards and pecuniary harm. *Id.* Such economic and reputational harms are among the "traditional harms" that unquestionably give rise to standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

Each of these harms is directly traceable to OPM's chaotic promulgation and rollout of the Fork Directive. Each would be redressable by the relief sought: injunctive and declaratory relief vacating the current program, requiring OPM to engage in reasoned rulemaking, and declaring unlawful employment-related retaliation arising out of acceptance or non-acceptance of the Fork Directive. A175 at 59 ¶¶ (A)-(C).

34

### 2.    The interests at stake are germane to the Unions' purpose.

The interests the Unions seek to protect are germane to the Unions' purpose—an argument the lower court failed to address, and the government has never challenged. This litigation advances members' employment rights, protects them from unlawful termination, advances lawful workplaces and stable pay, and encourages government effectiveness—each of which the Unions alleged are germane to their purposes. *Id.* at 124-26, 153 ¶¶ 25, 27–28, 31, 139. And the Unions regularly submit comments via the APA rulemaking process on behalf of their members to protect these kinds of interests. *See id.* at 153, 161 ¶¶ 139, 186. The OPM's decision to roll out the Fork Directive—a program that affected nearly the entire federal workforce—with no notice, opportunity to comment, or any of the procedural safeguards the APA affords, attacked interests that are unquestionably germane to the Unions' purposes.

### 3.    Individual members' participation is unnecessary.

The third factor, whether the litigation requires individual members' participation, is a "prudential" inquiry, not a constitutional

35

one, *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996), and courts have "latitude" to determine whether and how to apply this prong on and assess on a "case-by-case" basis, *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 314 (1st Cir. 2005). Here, no individual participation is required to prove that the government failed to engage in notice and comment, that the Fork Directive is arbitrary and capricious and contrary to law, or that OPM's actions were *ultra vires*. And where, as here, the parties seek only non-individualized relief, varying circumstances between members are immaterial. *See id.*

The single sentence on standing that appears in the District Court's order fails to engage with any of the Unions' allegations regarding associational standing. A180-81. And though the District Court purported to rely on the reasoning in its "prior Opinion and Order" for portions of its order of dismissal, *id.*, its Order on the Unions' motion for a temporary restraining order analyzes only organizational standing and is silent as to whether the Unions have associational standing. Add.001 at .003. By failing to engage with the Unions' claimed injuries, the Court failed to accept all "well-pleaded facts in the

complaint as true and indulge[] all reasonable inferences in [the Unions'] favor." *Dantzler*, 958 F.3d at 46-47. It should be reversed.

### B. The Unions have organizational standing.

The Unions also have organizational standing based on their own injuries. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975).

***First***, the Unions plausibly alleged that the government's violations of the APA impaired their abilities to provide services to their members. A159-61 ¶¶ 175–88. One of the Unions' core business activities is to advise their members of their rights and benefits in the workplace. *Id.* at 159, 161 ¶¶ 175-76, 187. Indeed, the Unions have a *legal duty* to represent their members and their interests. *See* 5 U.S.C. § 7114. The Fork Directive prevents the Unions from adequately advising and representing their clients because it created mass confusion about employment issues vital to the Unions' membership. A160-61 ¶¶ 180-87. While the Unions attempted to respond to the onslaught of inquiries from members generated by the Fork Directive, they have limited resources and were operating with limited information, so could not fully satisfy members' need for guidance. *Id.* at 160 ¶¶ 184-85. The substantial volume of inquiries and counseling

37

requests also required the Unions to divert resources from other parts of their core mission, including organizing and representing employees, negotiating with employers, and advocating for improved employment conditions. *Id.* at 161 ¶ 188.

Where, as here, actions by the defendant "directly affect[] and interfere[] with [an organization's] core business activities" they give rise to a cognizable injury for Article III purposes. *Hippocratic Med.*, 602 U.S. at 395 (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)); *see also Widakuswara v. Lake*, 779 F. Supp. 3d 10, 28 (D.D.C. 2025) (holding that AFSCME and AFGE expenditure of "significant resources to . . . perform their core services such as advising members about the terms of their employment and the implication of Defendants' actions" is sufficient for organizational standing) (alteration and quotation omitted; *AFGE v. U.S. OPM*, 781 F. Supp. 3d 920, 936-37 (N.D. Cal., 2025) (same); A117 at 161 ¶ 188. Thus, the confusion OPM created that interfered with the Unions' core activities gives rise to the Unions' organizational standing.

The District Court's order to the contrary misinterpreted the Supreme Court's decision in *Hippocratic Medicine*. It failed to address

38

the weight of authority that has interpreted that case to "reaffirm" longstanding caselaw that standing arises when a governmental action forces an organization to divert resources from its core business activities. *Nairne v. Landry*, 151 F.4th 666, 682 (5th Cir. 2025) (holding that an organization's need to divert resources away from its core mission to respond to government action gives rise to an Article III injury); *see also Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 120 F.4th 390, 397 (4th Cir. 2024) (same); *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 988 (9th Cir. 2025) (same). The Court failed to address the Unions' allegations regarding OPM's interference with its core business activities, recasting the Unions' claims as an attempt to "spend their way into standing." Add.003. In doing so, the Court ignored the well-pleaded allegations in the Amended Complaint and impermissibly drew inferences against the Unions.

*Second,* the Unions alleged that the Fork Directive has injured their membership, finances, and bargaining power. A162 ¶ 191. Specifically, members who accepted the Fork with an incomplete understanding of the program will now be separated from federal employment, will no longer be members of the Unions, and therefore

39

will no longer contribute to the Unions' persuasive strength in numbers or to its financial strength through membership dues. *Id.* These are well-established Article III injuries. *See Rivera-Vega v. ConAgra, Inc.*, 70 F.3d 153, 164 (1st Cir. 1995) (union's loss of member support constitutes irreparable injury); *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO by Negron v. Union De Carpinteros De P.R.*, 615 F. Supp. 3d 87, 94–95 (D.P.R. 2022) (impeding union's ability to carry out its duties to members constitutes injury); *see also Hunt*, 432 U.S. at 345 (loss of dues confers standing); *Am. Libr. Ass'n v. Sonderling*, 783 F. Supp. 3d 57, 60 (D.D.C. 2025) (reduction of union's bargaining power constitutes irreparable harm). The District Court failed to address these injuries. A.001; A.006.

**Third**, the Fork Directive prevented the Unions from participating in the decision-making process by filing comments of their own, in a way that affected their interests. A130, 138-39, 141-43, 148, 153 ¶¶ 54, 82, 88, 93, 100, 105, 124, 137. In *Nulankeyutmonen*, 503 F.3d at 27–29, this Court held that plaintiffs established Article III standing to challenge a federal agency's failure to follow statutory procedures where those procedural requirements protected the plaintiffs' interests.

*See also Citizens of Karst, Inc. v. U.S. Army Corps of Eng'rs*, 160 F. Supp. 3d 451, 457 (D.P.R. 2016) (failure to engage in notice and comment and evaluate project's impact injured plaintiff who had interest in evaluation gives rise to standing); *see also Nat'l Treasury Emps. Union v. Newman*, 768 F. Supp. 8, 10 (D.D.C. 1991) (holding that the plaintiff union "is unquestionably an interested party in OPM rulemaking proceedings and would undoubtedly participate in any such proceedings, as it often has in the past."). Here, the deprivation of the opportunity to provide notice and comment resulted in a chaotic and opaque program about which the Unions' could not advise their members. The District Court ignored these injuries as well. Add.001; Add.006.

   ***Finally,*** the Fork Directive's unlawful promulgation and implementation caused the Unions reputational harm by injuring their relationships with members in a way that reasoned decision-making would have prevented. A161-62 ¶¶ 189–90; *see, e.g.*, *TransUnion LLC*, 594 U.S. at 425 (reputational harm has long "provid[ed] a basis for lawsuits in American courts"). Once again, the District Court failed to grapple with these injuries. Add.001; Add.006.

41

In short, the Unions pleaded cognizable harms that give rise to organizational standing. The District Court erred in holding otherwise.

## CONCLUSION

For the foregoing reasons, the Unions respectfully request this Court reverse the Order of the District Court, and remand with instructions to proceed to the next stage of litigation. Under District of Massachusetts Local Rule 40.1(*l*)(2), the Unions respectfully request reassignment to a different district judge.


Dated: March 2, 2026                    KEKER, VAN NEST & PETERS LLP


                    */s/ Cody S. Harris*
                    CODY S. HARRIS
                    BAILEY W. HEAPS
                    CHRISTINE ZALESKI
                    NIALL M. FRIZZELL
                    CHARLOTTE KAMAI
                    633 Battery Street
                    San Francisco, CA 94111-1809
                    Telephone: 415 391 5400
                    Facsimile: 415 397 7188


                    DEMOCRACY FORWARD
                    FOUNDATION

ELENA GOLDSTEIN
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
Facsimile: (202) 796-4426

Attorneys for Plaintiffs-Appellants
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-
CIO; AMERICAN FEDERATION OF
STATE, COUNTY AND
MUNICIPAL EMPLOYEES, AFL-
CIO; and NATIONAL
ASSOCIATION OF GOVERNMENT
EMPLOYEES, INC.


AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-
CIO

RUSHAB B. SANGHVI
80 F Street N.W.
Washington, D.C. 20001
Telephone: (202) 639-6426
Facsimile: (202) 329-2928

Attorney for Plaintiff-Appellant
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
AFL-CIO AND LOCAL 3707


AMERICAN FEDERATION OF
STATE, COUNTY, AND
MUNICIPAL EMPLOYEES, AFL-
CIO

MATTHEW S. BLUMIN

43

1625 L Street N.W.
Washington, D.C. 20036
Telephone: (202) 775-5900
Facsimile: (202) 452-0556

Attorney for Plaintiff-Appellant
AMERICAN FEDERATION OF
STATE, COUNTY, AND
MUNICIPAL EMPLOYEES, AFL-
CIO

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned counsel hereby certifies that this document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 7,616 words.

This document also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionately spaced typeface using Microsoft Word (Office 16) in size 14 of Century Schoolbook.

Dated: March 2, 2026                    KEKER, VAN NEST & PETERS LLP

                                        */s/ Christine Zaleski*
                                        CHRISTINE ZALESKI

**ADDENDUM**

# TABLE OF CONTENTS

Hon. D.J. O'Toole Opinion and Order (Dkt. 66)
(February 12, 2025) .............................................................. Add.001

Hon. D.J. O'Toole Opinion and Order (Dkt. 104)
(September 24, 2025)............................................................ Add.006

Hon. D.J. O'Toole Order of Dismissal (Dkt. 105).......................... Add.008

Relevant Excerpts of the Civil Service Reform Act of 1978

5 U.S.C. § 1101 .................................................................. Add.009

5 U.S.C. § 1102 .................................................................. Add.010

5 U.S.C. § 1103 .................................................................. Add.011

5 U.S.C. § 1104 .................................................................. Add.014

5 U.S.C. § 1105 .................................................................. Add.016

5 U.S.C. § 1214 .................................................................. Add.017

5 U.S.C. § 2302 .................................................................. Add.023

5 U.S.C. § 7101 .................................................................. Add.032

5 U.S.C. § 7103 .................................................................. Add.033

5 U.S.C. § 7105 .................................................................. Add.038

5 U.S.C. § 7111 .................................................................. Add.041

5 U.S.C. § 7114 .................................................................. Add.044

5 U.S.C. § 7116 .................................................................. Add.047

5 U.S.C. § 7117 .................................................................. Add.050

5 U.S.C. § 7118 .................................................................. Add.053

5 U.S.C. § 7121 ........................................................................ Add.056

5 U.S.C. § 7512 ........................................................................ Add.060

5 U.S.C. § 7513 ........................................................................ Add.062

5 U.S.C. § 7701 ........................................................................ Add.064

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-10276-GAO

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN
FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, LOCAL 3707; AMERICAN
FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; and
NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC.,
Plaintiffs,

v.

CHARLES EZELL, in his official capacity as Acting Director of the Office of Personnel and
Management, and OFFICE OF PERSONNEL MANAGEMENT,
Defendants.

OPINION AND ORDER
February 12, 2025

O'TOOLE, D.J.

The plaintiffs, several labor unions representing federal employees, have moved to restrain the Office of Personnel Management ("OPM") and Charles Ezell, the acting director of OPM, from enforcing the deadline by which federal employees may accept OPM's "Fork in the Road" directive, which has been stylized by the plaintiffs as the "Fork Directive." That directive permitted certain federal employees in the executive branch to resign their positions effective September 30, 2025, but also permitted employees who took up the offer to cease active work in their respective agencies and still be paid their existing salaries through the end of the fiscal year. In addition, those employees would be free to pursue other remunerative employment outside of the executive branch if they wished.

On January 28, 2025, OPM sent an email to nearly all federal employees in the executive branch announcing the directive. As originally announced, the opportunity to accept the offer was

Add.001

to expire as of February 6. (Fork in the Road, U.S. Office of Pers. Mgmt., https://www.opm.gov/fork.)

The plaintiffs commenced this action on February 4, 2025, seeking to challenge the legal basis of the directive through two claims asserted under the Administrative Procedure Act ("APA"). The next day, the plaintiffs moved for a temporary restraining order to stay the directive's February 6 closing. The defendants oppose this motion. On February 6, the Court ordered the defendants to refrain from enforcing the deadline until further order of the Court. A hearing on the merits of the motion was held on February 10.

A plaintiff seeking a temporary restraining order or a preliminary injunction must establish four familiar elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm to the plaintiff in the absence of preliminary relief, (3) a balance of pertinent equities tips in plaintiff's favor, and (4) that the requested injunction would be consistent with the public interest. Together Emps. v. Mass. Gen. Brigham Inc., 32 F.4th 82, 85 (1st Cir. 2022) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)). The last two factors "merge when the Government is the party opposing the preliminary injunctions." Nken v. Holder, 556 U.S. 418, 435 (2009). Here, the plaintiffs have not established that they are likely to succeed on the merits.

The plaintiffs are unable to succeed on the merits of their two APA claims because they lack Article III standing and because this Court does not have subject matter jurisdiction over the claims asserted.

First, the unions lack standing to challenge the directive. Standing requires the plaintiffs to be more than "mere bystander[s]" and instead requires a "personal stake in the dispute." Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 379 (2024) (quotations omitted). Further, the Supreme Court recently held that an organization that is not directly affected by an agency's

2

Add.002

actions cannot establish standing simply by "divert[ing] its resources in response to a defendant's actions." Id. at 395. The plaintiffs cannot manufacture standing through self-inflicted harms. See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 416 (2013).

The plaintiffs here are not directly impacted by the directive. Instead, they allege that the directive subjects them to upstream effects including a diversion of resources to answer members' questions about the directive, a potential loss of membership, and possible reputational harm. The unions do not have the required direct stake in the Fork Directive, but are challenging a policy that affects others, specifically executive branch employees. This is not sufficient. Just as the Court found that the plaintiffs in Hippocratic Medicine could not spend their way into standing, neither can the plaintiffs in this case establish standing by choosing to divert resources towards "respond[ing] to tremendous uncertainty created by OPM's actions" and away from other union priorities. (Pls.' Mem. in Supp. of TRO 17.) Moreover, a loss of membership dues to the unions is not certain before the September 30th deadline.

Second, this Court lacks subject matter jurisdiction to consider the plaintiffs' pleaded claims. While not binding on this Court, the decision in Am. Fed'n of Gov't Emps., AFL-CIO v. Trump ("AFGE") is instructive. 929 F.3d 748 (D.C. Cir. 2019). In that case, the court held that the plaintiff-unions' claims fell within the Federal Service Labor-Management Relations Statute's ("FSL-MRS") scheme and therefore the district court lacked jurisdiction to hear the case. Id. at 754. In so deciding, the court walked through the two-part Thunder Basin framework. Id. ("Under that framework, Congress intended that a litigant proceed exclusively through a statutory scheme . . . when (i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure." (citations and quotations omitted)).

3

The D.C. Court of Appeals ruled that the first <u>Thunder Basin</u> step was satisfied because the FSL-MRS "provides the exclusive procedures by which federal employees and their bargaining representatives may assert federal labor-management relations claims." <u>Id.</u> at 755 (quoting <u>Am. Fed'n of Gov't Emps. v. Sec'y of the Air Force</u>, 716 F.3d 633, 638 (D.C. Cir. 2013)). This is also the case here. Congress intended for the FSL-MRS and the Civil Service Reform Act of 1978 ("CSRA"), of which the FSL-MRS is a part, to provide the exclusive procedures for disputes involving employees and their federal employers and disputes between unions representing federal employees and the federal government. According to this complex scheme, disputes must first be administratively exhausted before the employing agency and the relevant administrative review board and any further challenges are properly heard in a court of appeals. <u>See</u> <u>id.</u> at 752 (citing 5 U.S.C. §§ 7105(a), 7123(a), (c)); 5 U.S.C. § 7703(b). Therefore, the first <u>Thunder Basin</u> step is satisfied because Congress intended the FSL-MRS and CSRA to preclude district court review.

The second <u>Thunder Basin</u> step involves determining whether the plaintiffs' claims are of the type Congress intended for review within the statutory scheme. Again, the <u>AFGE</u> decision is illustrative. In that case, the court found that the plaintiff-unions' claims were of a type intended for review by the circuit court because (1) the unions had the possibility of meaningful judicial review even if they were required to go through the statutory scheme; (2) the claims were not "wholly collateral to the statutory scheme;" and, (3) the claims were not beyond the reviewing agency's expertise. <u>AFGE</u>, 929 F.3d at 755.

The two APA claims alleged in this case are the type of challenges Congress intended for review within the statutory scheme, which provides for "administrative and judicial review." <u>See</u> <u>id.</u> at 752; <u>Parrott v. Merit Sys. Prot. Bd.</u>, 519 F.3d 1328, 1334–35 (Fed. Cir. 2008) (reviewing a Merit Systems Protection Board decision regarding an allegedly involuntary resignation).

5

Aggrieved employees can bring claims through the administrative process. That the unions themselves may be foreclosed from this administrative process does not mean that adequate judicial review is lacking. See AFGE, 929 F.3d at 756; cf. Sackett v. EPA, 566 U.S. 120, 130 (2012) ("Where a statute provides that particular agency action is reviewable at the instance of one party, who must first exhaust administrative remedies, the inference that it is not reviewable at the instance of other parties, who are not subject to the administrative process, is strong."). The second and third factors are also satisfied. See Elgin v. Dep't of Treasury, 567 U.S. 1, 23 (2012) (finding that a constitutional question was within the agency's expertise because threshold questions about employment and routine statutory interpretations may be "brought to bear" to resolve the challenge); Sec'y of Air Force, 716 F.3d at 638 ("[T]he fact that National AFGE may not pursue a claim through the CSRA does not mean that it has access to the courts. Rather, it means that National AFGE may not raise the claim at all.").

For the foregoing reasons the temporary restraining order previously entered is DISSOLVED and further preliminary injunctive relief is DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 25-10276-GAO

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, AMERICAN
FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, and
NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC.,
Plaintiffs,

v.

CHARLES EZELL, in his official capacity as Acting Director of the Office of Personnel
Management, and OFFICE OF PERSONNEL MANAGEMENT,
Defendants.

OPINION AND ORDER
September 24, 2025

O'TOOLE, D.J.

After the plaintiffs' motion for a preliminary injunction was denied by this Court (dkt. no. 66), the plaintiffs filed an Amended Complaint (dkt. no. 77), asserting four revised counts. The first three counts purport to assert claims arising under the Administrative Procedure Act ("APA") and the last count asserts that the Office of Personnel Management lacked legal authority to propose the offers that were made to certain agency employees and therefore those offers were *ultra vires* and unenforceable.

The defendants have moved to dismiss the Amended Complaint with prejudice. They have properly pointed out that the jurisdictions of the federal courts that are inferior to the Supreme Court rest "entirely on statutory grants from Congress." Evans v. Thompson, 518 F.3d 1, 5 (1st Cir. 2008). As the defendants have also pointed out, the Court in this case has already concluded that existing statutes, the Civil Service Reform Act of 1978 ("CSRA") and the Federal Service Labor-Management Relations Statute ("FSL-MRS"), preclude jurisdiction here over the plaintiffs'

claims. See Am. Fed'n of Gov't Emps., AFL-CIO v. Ezell, No. CV 25-10276-GAO, 2025 WL

470459, at *2 (D. Mass. Feb. 12, 2025). Although the Amended Complaint has recast the claims

asserted under the APA in present Counts 1 through 3, the revised claims do nothing to authorize

those claims to be litigated in this Court in light of the CSRA and the FSL-MRS for the reasons

previously articulated by the Court in its prior Opinion and Order and as carefully and explicitly

addressed by the defendants in their brief in support of dismissal.

There is no need for a discussion that simply repeats the two major points argued by the

defendants: (1) that this Court lacks subject matter jurisdiction over the plaintiffs' claims in light

of the remedies available under the CSRA and FSL-MRS, and (2) that, under the circumstances

described in the pleadings and arguments, the plaintiffs lack standing to litigate the grievances set

forth in their claims and arguments. For these two reasons, the Amended Complaint is dismissed

with prejudice.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**American Federation of**
**Government Employees, AFL-CIO et al**

        Plaintiff(s)

        V.

**Charles Ezell et al**

        Defendant(s)

CIVIL ACTION

NO.  1:25-10276-GAO

**ORDER OF DISMISSAL**

O'TOOLE, D. J.

    In accordance with the Court's OPINION AND ORDER (Dkt. No. 104) dated September 24, 2025, it is hereby ORDERED that the above-entitled action be and hereby is DISMISSED.

        By the Court,

9/24/2025
Date

/s/ Flaviana de Oliveira
Deputy Clerk

Add.008

United States Code Annotated
　Title 5. Government Organization and Employees (Refs & Annos)
　　Part II. Civil Service Functions and Responsibilities (Refs & Annos)
　　　Chapter 11. Office of Personnel Management

5 U.S.C.A. § 1101

## § 1101. Office of Personnel Management

Currentness

The Office of Personnel Management is an independent establishment in the executive branch. The Office shall have an official seal, which shall be judicially noticed, and shall have its principal office in the District of Columbia, and may have field offices in other appropriate locations.

**CREDIT(S)**

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 398; Pub.L. 95-454, Title II, § 201(a), Oct. 13, 1978, 92 Stat. 1119.)

Add.009

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part II. Civil Service Functions and Responsibilities (Refs & Annos)
      Chapter 11. Office of Personnel Management

5 U.S.C.A. § 1102

## § 1102. Director; Deputy Director; Associate Directors

Currentness

**(a)** There is at the head of the Office of Personnel Management a Director of the Office of Personnel Management appointed by the President, by and with the advice and consent of the Senate. The term of office of any individual appointed as Director shall be 4 years.

**(b)** There is in the Office a Deputy Director of the Office of Personnel Management appointed by the President, by and with the advice and consent of the Senate. The Deputy Director shall perform such functions as the Director may from time to time prescribe and shall act as Director during the absence or disability of the Director or when the office of Director is vacant.

**(c)** No individual shall, while serving as Director or Deputy Director, serve in any other office or position in the Government of the United States except as otherwise provided by law or at the direction of the President. The Director and Deputy Director shall not recommend any individual for appointment to any position (other than Deputy Director of the Office) which requires the advice and consent of the Senate.

**(d)** There may be within the Office of Personnel Management not more than 5 Associate Directors, as determined from time to time by the Director. Each Associate Director shall be appointed by the Director.

**CREDIT(S)**

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 399; Pub.L. 95-454, Title II, § 201(a), Oct. 13, 1978, 92 Stat. 1119.)

Add.010

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part II. Civil Service Functions and Responsibilities (Refs & Annos)
      Chapter 11. Office of Personnel Management

5 U.S.C.A. § 1103

§ 1103. Functions of the Director

Currentness

**(a)** The following functions are vested in the Director of the Office of Personnel Management, and shall be performed by the Director, or subject to section 1104 of this title, by such employees of the Office as the Director designates:

**(1)** securing accuracy, uniformity, and justice in the functions of the Office;

**(2)** appointing individuals to be employed by the Office;

**(3)** directing and supervising employees of the Office, distributing business among employees and organizational units of the Office, and directing the internal management of the Office;

**(4)** directing the preparation of requests for appropriations for the Office and the use and expenditure of funds by the Office;

**(5)** executing, administering, and enforcing--

  **(A)** the civil service rules and regulations of the President and the Office and the laws governing the civil service; and

  **(B)** the other activities of the Office including retirement and classification activities;

  except with respect to functions for which the Merit Systems Protection Board or the Special Counsel is primarily responsible;

**(6)** reviewing the operations under chapter 87 of this title;

**(7)** aiding the President, as the President may request, in preparing such civil service rules as the President prescribes, and otherwise advising the President on actions which may be taken to promote an efficient civil service and a systematic application of the merit system principles, including recommending policies relating to the selection, promotion, transfer, performance, pay, conditions of service, tenure, and separation of employees;

Add.011

**(8)** conducting, or otherwise providing for the conduct of, studies and research under chapter 47 of this title into methods of assuring improvements in personnel management; and

**(9)** incurring official reception and representation expenses of the Office subject to any limitation prescribed in any law.

**(b)(1)** The Director shall publish in the Federal Register general notice of any rule or regulation which is proposed by the Office and the application of which does not apply solely to the Office or its employees. Any such notice shall include the matter required under section 553(b)(1), (2), and (3) of this title.

**(2)** The Director shall take steps to ensure that--

**(A)** any proposed rule or regulation to which paragraph (1) of this subsection applies is posted in offices of Federal agencies maintaining copies of the Federal personnel regulations; and

**(B)** to the extent the Director determines appropriate and practical, exclusive representatives of employees affected by such proposed rule or regulation and interested members of the public are notified of such proposed rule or regulation.

**(3)** Paragraphs (1) and (2) of this subsection shall not apply to any proposed rule or regulation which is temporary in nature and which is necessary to be implemented expeditiously as a result of an emergency.

**(4)** Paragraphs (1) and (2) of this subsection and section 1105 of this title shall not apply to the establishment of any schedules or rates of basic pay or allowances under subpart D of part III of this title. The preceding sentence does not apply to the establishment of the procedures, methodology, or criteria used to establish such schedules, rates, or allowances.

**(c)(1)** The Office of Personnel Management shall design a set of systems, including appropriate metrics, for assessing the management of human capital by Federal agencies.

**(2)** The systems referred to under paragraph (1) shall be defined in regulations of the Office of Personnel Management and include standards for--

**(A)(i)** aligning human capital strategies of agencies with the missions, goals, and organizational objectives of those agencies; and

**(ii)** integrating those strategies into the budget and strategic plans of those agencies;

**(B)** closing skill gaps in mission critical occupations;

**(C)** ensuring continuity of effective leadership through implementation of recruitment, development, and succession plans;

Add.012

**(D)** sustaining a culture that cultivates and develops a high performing workforce;

**(E)** developing and implementing a knowledge management strategy supported by appropriate investment in training and technology; and

**(F)** holding managers and human resources officers accountable for efficient and effective human resources management in support of agency missions in accordance with merit system principles.

**CREDIT(S)**

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 399; Pub.L. 95-454, Title II, § 201(a), Oct. 13, 1978, 92 Stat. 1119; Pub.L. 99-251, Title III, §§ 301, 302, Feb. 27, 1986, 100 Stat. 26; Pub.L. 107-296, Title XIII, § 1304, Nov. 25, 2002, 116 Stat. 2289.)

Notes of Decisions (23)

5 U.S.C.A. § 1103, 5 USCA § 1103
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add.013

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part II. Civil Service Functions and Responsibilities (Refs & Annos)
      Chapter 11. Office of Personnel Management

5 U.S.C.A. § 1104

## § 1104. Delegation of authority for personnel management

### Currentness

**(a)** Subject to subsection (b)(3) of this section--

**(1)** the President may delegate, in whole or in part, authority for personnel management functions, including authority for competitive examinations, to the Director of the Office of Personnel Management; and

**(2)** the Director may delegate, in whole or in part, any function vested in or delegated to the Director, including authority for competitive examinations (except competitive examinations for administrative law judges appointed under section 3105 of this title, the cost of which examinations shall be reimbursed by payments from the agencies employing such judges to the revolving fund established under section 1304(e)), to the heads of agencies in the executive branch and other agencies employing persons in the competitive service.

**(b)(1)** The Office shall establish standards which shall apply to the activities of the Office or any other agency under authority delegated under subsection (a) of this section.

**(2)** The Office shall establish and maintain an oversight program to ensure that activities under any authority delegated under subsection (a) of this section are in accordance with the merit system principles and the standards established under paragraph (1) of this subsection.

**(3)** Nothing in subsection (a) of this section shall be construed as affecting the responsibility of the Director to prescribe regulations and to ensure compliance with the civil service laws, rules, and regulations.

**(4)** At the request of the head of an agency to whom a function has been delegated under subsection (a)(2), the Office may provide assistance to the agency in performing such function. Such assistance shall, to the extent determined appropriate by the Director of the Office, be performed on a reimbursable basis through the revolving fund established under section 1304(e).

**(c)** If the Office makes a written finding, on the basis of information obtained under the program established under subsection (b)(2) of this section or otherwise, that any action taken by an agency pursuant to authority delegated under subsection (a)(2) of this section is contrary to any law, rule, or regulation, or is contrary to any standard established under subsection (b)(1) of this section, the agency involved shall take any corrective action the Office may require.

Add.014

**CREDIT(S)**

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 399; Pub.L. 90-83, § 1(2), Sept. 11, 1967, 81 Stat. 195; Pub.L. 95-454, Title II, § 201(a), Oct. 13, 1978, 92 Stat. 1120; Pub.L. 104-52, Title IV, § 1, Nov. 19, 1995, 109 Stat. 489.)

Notes of Decisions (2)

5 U.S.C.A. § 1104, 5 USCA § 1104
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add.015

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part II. Civil Service Functions and Responsibilities (Refs & Annos)
      Chapter 11. Office of Personnel Management

5 U.S.C.A. § 1105

§ 1105. Administrative procedure

Currentness

Subject to section 1103(b) of this title, in the exercise of the functions assigned under this chapter, the Director shall be subject to subsections (b), (c), and (d) of section 553 of this title, notwithstanding subsection (a) of such section 553.

**CREDIT(S)**

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 400; Pub.L. 95-454, Title II, § 201(a), Oct. 13, 1978, 92 Stat. 1121.)

Notes of Decisions (4)

5 U.S.C.A. § 1105, 5 USCA § 1105
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2026 Thomson Reuters. No claim to original U.S. Government Works.  1

United States Code Annotated
   Title 5. Government Organization and Employees (Refs & Annos)
      Part II. Civil Service Functions and Responsibilities (Refs & Annos)
         Chapter 12. Merit Systems Protection Board, Office of Special Counsel, and Employee Right of Action (Refs & Annos)
            Subchapter II. Office of Special Counsel (Refs & Annos)

5 U.S.C.A. § 1214

## § 1214. Investigation of prohibited personnel practices; corrective action

Effective: December 12, 2017

Currentness

**(a)(1)(A)** The Special Counsel shall receive any allegation of a prohibited personnel practice and shall investigate the allegation to the extent necessary to determine whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken.

**(B)** Within 15 days after the date of receiving an allegation of a prohibited personnel practice under paragraph (1), the Special Counsel shall provide written notice to the person who made the allegation that--

**(i)** the allegation has been received by the Special Counsel; and

**(ii)** shall include the name of a person at the Office of Special Counsel who shall serve as a contact with the person making the allegation.

**(C)** Unless an investigation is terminated under paragraph (2), the Special Counsel shall--

**(i)** within 90 days after notice is provided under subparagraph (B), notify the person who made the allegation of the status of the investigation and any action taken by the Office of the Special Counsel since the filing of the allegation;

**(ii)** notify such person of the status of the investigation and any action taken by the Office of the Special Counsel since the last notice, at least every 60 days after notice is given under clause (i); and

**(iii)** notify such person of the status of the investigation and any action taken by the Special Counsel at such time as determined appropriate by the Special Counsel.

**(D)** No later than 10 days before the Special Counsel terminates any investigation of a prohibited personnel practice, the Special Counsel shall provide a written status report to the person who made the allegation of the proposed findings of fact and legal conclusions. The person may submit written comments about the report to the Special Counsel. The Special Counsel shall not be required to provide a subsequent written status report under this subparagraph after the submission of such written comments.

Add.017

**(2)(A)** If the Special Counsel terminates any investigation under paragraph (1), the Special Counsel shall prepare and transmit to any person on whose allegation the investigation was initiated a written statement notifying the person of--

**(i)** the termination of the investigation;

**(ii)** a summary of relevant facts ascertained by the Special Counsel, including the facts that support, and the facts that do not support, the allegations of such person;

**(iii)** the reasons for terminating the investigation; and

**(iv)** a response to any comments submitted under paragraph (1)(D).

**(B)** A written statement under subparagraph (A) may not be admissible as evidence in any judicial or administrative proceeding, without the consent of the person who received such statement under subparagraph (A).

**(3)** Except in a case in which an employee, former employee, or applicant for employment has the right to appeal directly to the Merit Systems Protection Board under any law, rule, or regulation, any such employee, former employee, or applicant shall seek corrective action from the Special Counsel before seeking corrective action from the Board. An employee, former employee, or applicant for employment may seek corrective action from the Board under section 1221, if such employee, former employee, or applicant seeks corrective action for a prohibited personnel practice described in section 2302(b)(8) or section 2302(b)(9) (A)(i), (B), (C), or (D) from the Special Counsel and--

**(A)(i)** the Special Counsel notifies such employee, former employee, or applicant that an investigation concerning such employee, former employee, or applicant has been terminated; and

**(ii)** no more than 60 days have elapsed since notification was provided to such employee, former employee, or applicant for employment that such investigation was terminated; or

**(B)** 120 days after seeking corrective action from the Special Counsel, such employee, former employee, or applicant has not been notified by the Special Counsel that the Special Counsel shall seek corrective action on behalf of such employee, former employee, or applicant.

**(4)** If an employee, former employee, or applicant seeks a corrective action from the Board under section 1221, pursuant to the provisions of paragraph (3)(B), the Special Counsel may continue to seek corrective action personal to such employee, former employee, or applicant only with the consent of such employee, former employee, or applicant.

**(5)** In addition to any authority granted under paragraph (1), the Special Counsel may, in the absence of an allegation, conduct an investigation for the purpose of determining whether there are reasonable grounds to believe that a prohibited personnel practice (or a pattern of prohibited personnel practices) has occurred, exists, or is to be taken.

Add.018

**(6)(A)** Notwithstanding any other provision of this section, not later than 30 days after the date on which the Special Counsel receives an allegation of a prohibited personnel practice under paragraph (1), the Special Counsel may terminate an investigation of the allegation without further inquiry if the Special Counsel determines that--

  **(i)** the same allegation, based on the same set of facts and circumstances, had previously been--

    **(I)(aa)** made by the individual; and

    **(bb)** investigated by the Special Counsel; or

    **(II)** filed by the individual with the Merit Systems Protection Board;

  **(ii)** the Special Counsel does not have jurisdiction to investigate the allegation; or

  **(iii)** the individual knew or should have known of the alleged prohibited personnel practice on or before the date that is 3 years before the date on which the Special Counsel received the allegation.

**(B)** Not later than 30 days after the date on which the Special Counsel terminates an investigation under subparagraph (A), the Special Counsel shall provide a written notification to the individual who submitted the allegation of a prohibited personnel practice that states the basis of the Special Counsel for terminating the investigation.

**(b)(1)(A)(i)** The Special Counsel may request any member of the Merit Systems Protection Board to order a stay of any personnel action for 45 days if the Special Counsel determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice.

**(ii)** Any member of the Board requested by the Special Counsel to order a stay under clause (i) shall order such stay unless the member determines that, under the facts and circumstances involved, such a stay would not be appropriate.

**(iii)** Unless denied under clause (ii), any stay under this subparagraph shall be granted within 3 calendar days (excluding Saturdays, Sundays, and legal holidays) after the date of the request for the stay by the Special Counsel.

**(B)(i)** The Board may extend the period of any stay granted under subparagraph (A) for any period which the Board considers appropriate.

**(ii)** If the Board lacks the number of members appointed under section 1201 required to constitute a quorum, any remaining member of the Board may, upon request by the Special Counsel, extend the period of any stay granted under subparagraph (A).

**(C)** The Board shall allow any agency which is the subject of a stay to comment to the Board on any extension of stay proposed under subparagraph (B).

Add.019

**(D)** A stay may be terminated by the Board at any time, except that a stay may not be terminated by the Board--

**(i)** on its own motion or on the motion of an agency, unless notice and opportunity for oral or written comments are first provided to the Special Counsel and the individual on whose behalf the stay was ordered; or

**(ii)** on motion of the Special Counsel, unless notice and opportunity for oral or written comments are first provided to the individual on whose behalf the stay was ordered.

**(E)** If the Board grants a stay under subparagraph (A), the head of the agency employing the employee who is the subject of the action shall give priority to a request for a transfer submitted by the employee.

**(2)(A)(i)** Except as provided under clause (ii), no later than 240 days after the date of receiving an allegation of a prohibited personnel practice under paragraph (1), the Special Counsel shall make a determination whether there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken.

**(ii)** If the Special Counsel is unable to make the required determination within the 240-day period specified under clause (i) and the person submitting the allegation of a prohibited personnel practice agrees to an extension of time, the determination shall be made within such additional period of time as shall be agreed upon between the Special Counsel and the person submitting the allegation.

**(B)** If, in connection with any investigation, the Special Counsel determines that there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken which requires corrective action, the Special Counsel shall report the determination together with any findings or recommendations to the Board, the agency involved and to the Office of Personnel Management, and may report such determination, findings and recommendations to the President. The Special Counsel may include in the report recommendations for corrective action to be taken.

**(C)** If, after a reasonable period of time, the agency does not act to correct the prohibited personnel practice, the Special Counsel may petition the Board for corrective action.

**(D)** If the Special Counsel finds, in consultation with the individual subject to the prohibited personnel practice, that the agency has acted to correct the prohibited personnel practice, the Special Counsel shall file such finding with the Board, together with any written comments which the individual may provide.

**(E)** A determination by the Special Counsel under this paragraph shall not be cited or referred to in any proceeding under this paragraph or any other administrative or judicial proceeding for any purpose, without the consent of the person submitting the allegation of a prohibited personnel practice.

**(3)** Whenever the Special Counsel petitions the Board for corrective action, the Board shall provide an opportunity for--

**(A)** oral or written comments by the Special Counsel, the agency involved, and the Office of Personnel Management; and

Add.020

**(B)** written comments by any individual who alleges to be the subject of the prohibited personnel practice.

**(4)(A)** The Board shall order such corrective action as the Board considers appropriate, if the Board determines that the Special Counsel has demonstrated that a prohibited personnel practice, other than one described in section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D), has occurred, exists, or is to be taken.

**(B)(i)** Subject to the provisions of clause (ii), in any case involving an alleged prohibited personnel practice as described under section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D), the Board shall order such corrective action as the Board considers appropriate if the Special Counsel has demonstrated that a disclosure or protected activity described under section 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D) was a contributing factor in the personnel action which was taken or is to be taken against the individual.

**(ii)** Corrective action under clause (i) may not be ordered if, after a finding that a protected disclosure was a contributing factor, the agency demonstrates by clear and convincing evidence that it would have taken the same personnel action in the absence of such disclosure.

**(c)(1)** Judicial review of any final order or decision of the Board under this section may be obtained by any employee, former employee, or applicant for employment adversely affected by such order or decision.

**(2)** A petition for review under this subsection shall be filed with such court, and within such time, as provided for under section 7703(b).

**(d)(1)** If, in connection with any investigation under this subchapter, the Special Counsel determines that there is reasonable cause to believe that a criminal violation has occurred, the Special Counsel shall report the determination to the Attorney General and to the head of the agency involved, and shall submit a copy of the report to the Director of the Office of Personnel Management and the Director of the Office of Management and Budget.

**(2)** In any case in which the Special Counsel determines that there are reasonable grounds to believe that a prohibited personnel practice has occurred, exists, or is to be taken, the Special Counsel shall proceed with any investigation or proceeding unless--

**(A)** the alleged violation has been reported to the Attorney General; and

**(B)** the Attorney General is pursuing an investigation, in which case the Special Counsel, after consultation with the Attorney General, has discretion as to whether to proceed.

**(e)** If, in connection with any investigation under this subchapter, the Special Counsel determines that there is reasonable cause to believe that any violation of any law, rule, or regulation has occurred other than one referred to in subsection (b) or (d), the Special Counsel shall report such violation to the head of the agency involved. The Special Counsel shall require, within 30 days after the receipt of the report by the agency, a certification by the head of the agency which states--

Add.021

**(1)** that the head of the agency has personally reviewed the report; and

**(2)** what action has been or is to be taken, and when the action will be completed.

**(f)** During any investigation initiated under this subchapter, no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel.

**(g)** If the Board orders corrective action under this section, such corrective action may include--

**(1)** that the individual be placed, as nearly as possible, in the position the individual would have been in had the prohibited personnel practice not occurred; and

**(2)** reimbursement for attorney's fees, back pay and related benefits, medical costs incurred, travel expenses, any other reasonable and foreseeable consequential damages, and compensatory damages (including interest, reasonable expert witness fees, and costs).

**(h)** Any corrective action ordered under this section to correct a prohibited personnel practice may include fees, costs, or damages reasonably incurred due to an agency investigation of the employee, if such investigation was commenced, expanded, or extended in retaliation for the disclosure or protected activity that formed the basis of the corrective action.

**(i)** The Special Counsel may petition the Board to order corrective action, including fees, costs, or damages reasonably incurred by an employee due to an investigation of the employee by an agency, if the investigation by an agency was commenced, expanded, or extended in retaliation for a disclosure or protected activity described in section 2302(b)(8) or subparagraph (A)(i), (B), (C), or (D) of section 2302(b)(9), without regard to whether a personnel action, as defined in section 2302(a)(2)(A), is taken.

**CREDIT(S)**

(Added Pub.L. 101-12, § 3(a)(13), Apr. 10, 1989, 103 Stat. 23; amended Pub.L. 103-424, §§ 3(c), (d), 8(a), Oct. 29, 1994, 108 Stat. 4362, 4364; Pub.L. 112-199, Title I, §§ 101(b)(1)(A), (2)(A), 104(c)(1), 107(b), 114(a), Nov. 27, 2012, 126 Stat. 1465, 1468, 1469, 1472; Pub.L. 115-42, § 1, June 27, 2017, 131 Stat. 883; Pub.L. 115-73, Title I, § 102(a), Oct. 26, 2017, 131 Stat. 1236; Pub.L. 115-91, Div. A, Title X, § 1097(c)(3)(A), (4), (f), (j), Dec. 12, 2017, 131 Stat. 1619, 1622, 1625.)

Notes of Decisions (199)

**O'CONNOR'S CROSS REFERENCES**
See also *O'Connor's Federal Rules*, "Motion for Attorney Fees," ch. 9-C, §1 et seq.

5 U.S.C.A. § 1214, 5 USCA § 1214
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part III. Employees (Refs & Annos)
      Subpart A. General Provisions
        Chapter 23. Merit System Principles

5 U.S.C.A. § 2302

## § 2302. Prohibited personnel practices

Effective: January 1, 2021
Currentness

**(a)(1)** For the purpose of this title, "prohibited personnel practice" means any action described in subsection (b).

**(2)** For the purpose of this section--

  **(A)** "personnel action" means--

    **(i)** an appointment;

    **(ii)** a promotion;

    **(iii)** an action under chapter 75 of this title or other disciplinary or corrective action;

    **(iv)** a detail, transfer, or reassignment;

    **(v)** a reinstatement;

    **(vi)** a restoration;

    **(vii)** a reemployment;

    **(viii)** a performance evaluation under chapter 43 of this title or under title 38;

    **(ix)** a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, performance evaluation, or other action described in this subparagraph;

Add.023

**(x)** a decision to order psychiatric testing or examination;

**(xi)** the implementation or enforcement of any nondisclosure policy, form, or agreement; and

**(xii)** any other significant change in duties, responsibilities, or working conditions;

with respect to an employee in, or applicant for, a covered position in an agency, and in the case of an alleged prohibited personnel practice described in subsection (b)(8), an employee or applicant for employment in a Government corporation as defined in section 9101 of title 31;

**(B)** "covered position" means, with respect to any personnel action, any position in the competitive service, a career appointee position in the Senior Executive Service, or a position in the excepted service, but does not include any position which is, prior to the personnel action--

**(i)** excepted from the competitive service because of its confidential, policy-determining, policy-making, or policy-advocating character; or

**(ii)** excluded from the coverage of this section by the President based on a determination by the President that it is necessary and warranted by conditions of good administration;

**(C)** "agency" means an Executive agency and the Government Publishing Office, but does not include--

**(i)** a Government corporation, except in the case of an alleged prohibited personnel practice described under subsection (b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D);

**(ii)(I)** the Federal Bureau of Investigation, the Central Intelligence Agency, the Defense Intelligence Agency, the National Geospatial-Intelligence Agency, the National Security Agency, the Office of the Director of National Intelligence, and the National Reconnaissance Office; and

**(II)** as determined by the President, any executive agency or unit thereof the principal function of which is the conduct of foreign intelligence or counterintelligence activities, provided that the determination be made prior to a personnel action; or

**(iii)** the Government Accountability Office; and

**(D)** "disclosure" means a formal or informal communication or transmission, but does not include a communication concerning policy decisions that lawfully exercise discretionary authority unless the employee or applicant providing the disclosure reasonably believes that the disclosure evidences--

**(i)** any violation of any law, rule, or regulation; or

Add.024

**(ii)** gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

**(b)** Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority--

  **(1)** discriminate for or against any employee or applicant for employment--

    **(A)** on the basis of race, color, religion, sex, or national origin, as prohibited under section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16);

    **(B)** on the basis of age, as prohibited under sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a);

    **(C)** on the basis of sex, as prohibited under section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d));

    **(D)** on the basis of handicapping condition, as prohibited under section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791); or

    **(E)** on the basis of marital status or political affiliation, as prohibited under any law, rule, or regulation;

  **(2)** solicit or consider any recommendation or statement, oral or written, with respect to any individual who requests or is under consideration for any personnel action unless such recommendation or statement is based on the personal knowledge or records of the person furnishing it and consists of--

    **(A)** an evaluation of the work performance, ability, aptitude, or general qualifications of such individual; or

    **(B)** an evaluation of the character, loyalty, or suitability of such individual;

  **(3)** coerce the political activity of any person (including the providing of any political contribution or service), or take any action against any employee or applicant for employment as a reprisal for the refusal of any person to engage in such political activity;

  **(4)** deceive or willfully obstruct any person with respect to such person's right to compete for employment;

  **(5)** influence any person to withdraw from competition for any position for the purpose of improving or injuring the prospects of any other person for employment;

Add.025

**(6)** grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;

**(7)** appoint, employ, promote, advance, or advocate for appointment, employment, promotion, or advancement, in or to a civilian position any individual who is a relative (as defined in section 3110(a)(3) of this title) of such employee if such position is in the agency in which such employee is serving as a public official (as defined in section 3110(a)(2) of this title) or over which such employee exercises jurisdiction or control as such an official;

**(8)** take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of--

   **(A)** any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences--

      **(i)** any violation of any law, rule, or regulation, or

      **(ii)** gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety,

         if such disclosure is not specifically prohibited by law and if such information is not specifically required by Executive order to be kept secret in the interest of national defense or the conduct of foreign affairs;

   **(B)** any disclosure to the Special Counsel, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences--

      **(i)** any violation (other than a violation of this section) of any law, rule, or regulation, or

      **(ii)** gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety; or

   **(C)** any disclosure to Congress (including any committee of Congress) by any employee of an agency or applicant for employment at an agency of information described in subparagraph (B) that is--

      **(i)** not classified; or

      **(ii)** if classified--

Add.026

**(I)** has been classified by the head of an agency that is not an element of the intelligence community (as defined by section 3 of the National Security Act of 1947 (50 U.S.C. 3003)); and

**(II)** does not reveal intelligence sources and methods.[1]

**(9)** take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of--

**(A)** the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation--

**(i)** with regard to remedying a violation of paragraph (8); or

**(ii)** other than with regard to remedying a violation of paragraph (8);

**(B)** testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A)(i) or (ii);

**(C)** cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law; or

**(D)** refusing to obey an order that would require the individual to violate a law, rule, or regulation;

**(10)** discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others; except that nothing in this paragraph shall prohibit an agency from taking into account in determining suitability or fitness any conviction of the employee or applicant for any crime under the laws of any State, of the District of Columbia, or of the United States;

**(11)(A)** knowingly take, recommend, or approve any personnel action if the taking of such action would violate a veterans' preference requirement; or

**(B)** knowingly fail to take, recommend, or approve any personnel action if the failure to take such action would violate a veterans' preference requirement;

**(12)** take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title;

**(13)** implement or enforce any nondisclosure policy, form, or agreement, if such policy, form, or agreement--

Add.027

(A) does not contain the following statement: "These provisions are consistent with and do not supersede, conflict with, or otherwise alter the employee obligations, rights, or liabilities created by existing statute or Executive order relating to (1) classified information, (2) communications to Congress, (3) the reporting to an Inspector General or the Office of Special Counsel of a violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or (4) any other whistleblower protection. The definitions, requirements, obligations, rights, sanctions, and liabilities created by controlling Executive orders and statutory provisions are incorporated into this agreement and are controlling."; or

(B) prohibits or restricts an employee or applicant for employment from disclosing to Congress, the Special Counsel, the Inspector General of an agency, or any other agency component responsible for internal investigation or review any information that relates to any violation of any law, rule, or regulation, or mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety, or any other whistleblower protection; or

(14) access the medical record of another employee or an applicant for employment as a part of, or otherwise in furtherance of, any conduct described in paragraphs (1) through (13).

This subsection shall not be construed to authorize the withholding of information from Congress or the taking of any personnel action against an employee who discloses information to Congress. For purposes of paragraph (8), (i) any presumption relating to the performance of a duty by an employee whose conduct is the subject of a disclosure as defined under subsection (a)(2)(D) may be rebutted by substantial evidence, and (ii) a determination as to whether an employee or applicant reasonably believes that such employee or applicant has disclosed information that evidences any violation of law, rule, regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety shall be made by determining whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee or applicant could reasonably conclude that the actions of the Government evidence such violations, mismanagement, waste, abuse, or danger.

(c)(1) In this subsection--

(A) the term "new employee" means an individual--

(i) appointed to a position as an employee on or after the date of enactment of this subsection; and

(ii) who has not previously served as an employee; and

(B) the term "whistleblower protections" means the protections against and remedies for a prohibited personnel practice described in paragraph (8) or subparagraph (A)(i), (B), (C), or (D) of paragraph (9) of subsection (b).

(2) The head of each agency shall be responsible for--

(A) preventing prohibited personnel practices;

Add.028

**(B)** complying with and enforcing applicable civil service laws, rules, and regulations and other aspects of personnel management; and

**(C)** ensuring, in consultation with the Special Counsel and the Inspector General of the agency, that employees of the agency are informed of the rights and remedies available to the employees under this chapter and chapter 12, including--

**(i)** information with respect to whistleblower protections available to new employees during a probationary period;

**(ii)** the role of the Office of Special Counsel and the Merit Systems Protection Board with respect to whistleblower protections; and

**(iii)** the means by which, with respect to information that is otherwise required by law or Executive order to be kept classified in the interest of national defense or the conduct of foreign affairs, an employee may make a lawful disclosure of the information to--

**(I)** the Special Counsel;

**(II)** the Inspector General of an agency;

**(III)** Congress (including any committee of Congress with respect to information that is not classified or, if classified, has been classified by the head of an agency that is not an element of the intelligence community and does not reveal intelligence sources and methods); or

**(IV)** another employee of the agency who is designated to receive such a disclosure.

**(3)** The head of each agency shall ensure that the information described in paragraph (2) is provided to each new employee of the agency not later than 180 days after the date on which the new employee is appointed.

**(4)** The head of each agency shall make available information regarding whistleblower protections applicable to employees of the agency on the public website of the agency and on any online portal that is made available only to employees of the agency, if such portal exists.

**(5)** Any employee to whom the head of an agency delegates authority for any aspect of personnel management shall, within the limits of the scope of the delegation, be responsible for the activities described in paragraph (2).

**(d)** This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to any employee or applicant for employment in the civil service under--

Add.029

**(1)** section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin;

**(2)** sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), prohibiting discrimination on the basis of age;

**(3)** under section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d)), prohibiting discrimination on the basis of sex;

**(4)** section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791), prohibiting discrimination on the basis of handicapping condition; or

**(5)** the provisions of any law, rule, or regulation prohibiting discrimination on the basis of marital status or political affiliation.

**(e)(1)** For the purpose of this section, the term "veterans' preference requirement" means any of the following provisions of law:

**(A)** Sections 2108, 3305(b), 3309, 3310, 3311, 3312, 3313, 3314, 3315, 3316, 3317(b), 3318, 3320, 3351, 3352, 3363, 3501, 3502(b), 3504, and 4303(e) and (with respect to a preference eligible referred to in section 7511(a)(1)(B)) subchapter II of chapter 75 and section 7701.

**(B)** Sections 943(c)(2) and 1784(c) of title 10.

**(C)** Section 1308(b) of the Alaska National Interest Lands Conservation Act.

**(D)** Section 301(c) of the Foreign Service Act of 1980.

**(E)** Sections 106(f), 7281(e), and 7802(5) of title 38.

**(F)** Section 1005(a) of title 39.

**(G)** Any other provision of law that the Director of the Office of Personnel Management designates in regulations as being a veterans' preference requirement for the purposes of this subsection.

**(H)** Any regulation prescribed under subsection (b) or (c) of section 1302 and any other regulation that implements a provision of law referred to in any of the preceding subparagraphs.

Add.030

**(2)** Notwithstanding any other provision of this title, no authority to order corrective action shall be available in connection with a prohibited personnel practice described in subsection (b)(11). Nothing in this paragraph shall be considered to affect any authority under section 1215 (relating to disciplinary action).

**(f)(1)** A disclosure shall not be excluded from subsection (b)(8) because--

**(A)** the disclosure was made to a supervisor or to a person who participated in an activity that the employee or applicant reasonably believed to be covered by subsection (b)(8)(A)(i) and (ii);

**(B)** the disclosure revealed information that had been previously disclosed;

**(C)** of the employee's or applicant's motive for making the disclosure;

**(D)** the disclosure was not made in writing;

**(E)** the disclosure was made while the employee was off duty;

**(F)** the disclosure was made before the date on which the individual was appointed or applied for appointment to a position; or

**(G)** of the amount of time which has passed since the occurrence of the events described in the disclosure.

**(2)** If a disclosure is made during the normal course of duties of an employee, the principal job function of whom is to regularly investigate and disclose wrongdoing (referred to in this paragraph as the "disclosing employee"), the disclosure shall not be excluded from subsection (b)(8) if the disclosing employee demonstrates that an employee who has the authority to take, direct other individuals to take, recommend, or approve any personnel action with respect to the disclosing employee took, failed to take, or threatened to take or fail to take a personnel action with respect to the disclosing employee in reprisal for the disclosure made by the disclosing employee.

### CREDIT(S)

(Added Pub.L. 95-454, Title I, § 101(a), Oct. 13, 1978, 92 Stat. 1114; amended Pub.L. 101-12, § 4, Apr. 10, 1989, 103 Stat. 32; Pub.L. 101-474, § 5(d), Oct. 30, 1990, 104 Stat. 1099; Pub.L. 102-378, § 2(5), Oct. 2, 1992, 106 Stat. 1346; Pub.L. 103-94, § 8(c), Oct. 6, 1993, 107 Stat. 1007; Pub.L. 103-359, Title V, § 501(c), Oct. 14, 1994, 108 Stat. 3429; Pub.L. 103-424, § 5, Oct. 29, 1994, 108 Stat. 4363; Pub.L. 104-197, Title III, § 315(b)(2), Sept. 16, 1996, 110 Stat. 2416; Pub.L. 104-201, Div. A, Title XI, § 1122(a)(1), Title XVI, § 1615(b), Sept. 23, 1996, 110 Stat. 2687, 2741; Pub.L. 105-339, § 6(a), (b), (c)(2), Oct. 31, 1998, 112 Stat. 3187, 3188; Pub.L. 108-271, § 8(b), July 7, 2004, 118 Stat. 814; Pub.L. 110-417, Div. A, Title IX, § 931(a)(1), Oct. 14, 2008, 122 Stat. 4575; Pub.L. 112-199, Title I, §§ 101(a), (b)(1)(B), (2)(B), (C), 102 to 104(b)(1), 105, 112, Nov. 27, 2012, 126 Stat. 1465 to 1468, 1472; Pub.L. 112-277, Title V, § 505(a), Jan. 14, 2013, 126 Stat. 2478; Pub.L. 113-235, Div. H, Title I, § 1301(b), Dec. 16, 2014, 128 Stat. 2537; Pub.L. 114-113, Div. J, Title II, § 238, Dec. 18, 2015, 129 Stat. 2700; Pub.L. 115-40, § 2, June 14, 2017, 131 Stat. 861; Pub.L. 115-73, Title I, §§ 103, 107(a)(1), Oct. 26, 2017, 131 Stat. 1236, 1238; Pub.L. 115-91, Div. A, Title X, § 1097(b)(1)(B), (c)(1), Dec. 12, 2017, 131 Stat. 1616, 1618; Pub.L. 116-92, Div. E, Title LVII, § 5721, Dec. 20, 2019, 133 Stat. 2175; Pub.L. 116-283, Div. A, Title XI, § 1138, Jan. 1, 2021, 134 Stat. 3905.)

Add.031

United States Code Annotated
   Title 5. Government Organization and Employees (Refs & Annos)
      Part III. Employees (Refs & Annos)
         Subpart F. Labor-Management and Employee Relations
            Chapter 71. Labor-Management Relations (Refs & Annos)
               Subchapter I. General Provisions

5 U.S.C.A. § 7101

# § 7101. Findings and purpose

Currentness

**(a)** The Congress finds that--

**(1)** experience in both private and public employment indicates that the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them--

**(A)** safeguards the public interest,

**(B)** contributes to the effective conduct of public business, and

**(C)** facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment; and

**(2)** the public interest demands the highest standards of employee performance and the continued development and implementation of modern and progressive work practices to facilitate and improve employee performance and the efficient accomplishment of the operations of the Government.

Therefore, labor organizations and collective bargaining in the civil service are in the public interest.

**(b)** It is the purpose of this chapter to prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government. The provisions of this chapter should be interpreted in a manner consistent with the requirement of an effective and efficient Government.

**CREDIT(S)**

(Added Pub.L. 95-454, Title VII, § 701, Oct. 13, 1978, 92 Stat. 1192.)

United States Code Annotated
    Title 5. Government Organization and Employees (Refs & Annos)
        Part III. Employees (Refs & Annos)
            Subpart F. Labor-Management and Employee Relations
                Chapter 71. Labor-Management Relations (Refs & Annos)
                    Subchapter I. General Provisions

5 U.S.C.A. § 7103

§ 7103. Definitions; application

Effective: December 16, 2014
Currentness

**(a)** For the purpose of this chapter--

**(1)** "person" means an individual, labor organization, or agency;

**(2)** "employee" means an individual--

**(A)** employed in an agency; or

**(B)** whose employment in an agency has ceased because of any unfair labor practice under section 7116 of this title and who has not obtained any other regular and substantially equivalent employment, as determined under regulations prescribed by the Federal Labor Relations Authority;

but does not include--

**(i)** an alien or noncitizen of the United States who occupies a position outside the United States;

**(ii)** a member of the uniformed services;

**(iii)** a supervisor or a management official;

**(iv)** an officer or employee in the Foreign Service of the United States employed in the Department of State, the International Communication Agency, the Agency for International Development, the Department of Agriculture, or the Department of Commerce; or

**(v)** any person who participates in a strike in violation of section 7311 of this title;

Add.033

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(3)** "agency" means an Executive agency (including a nonappropriated fund instrumentality described in section 2105(c) of this title and the Veterans' Canteen Service, Department of Veterans Affairs), the Library of Congress, the Government Publishing Office, and the Smithsonian Institution[1] but does not include--

    **(A)** the Government Accountability Office;

    **(B)** the Federal Bureau of Investigation;

    **(C)** the Central Intelligence Agency;

    **(D)** the National Security Agency;

    **(E)** the Tennessee Valley Authority;

    **(F)** the Federal Labor Relations Authority;

    **(G)** the Federal Service Impasses Panel; or

    **(H)** the United States Secret Service and the United States Secret Service Uniformed Division.

**(4)** "labor organization" means an organization composed in whole or in part of employees, in which employees participate and pay dues, and which has as a purpose the dealing with an agency concerning grievances and conditions of employment, but does not include--

    **(A)** an organization which, by its constitution, bylaws, tacit agreement among its members, or otherwise, denies membership because of race, color, creed, national origin, sex, age, preferential or nonpreferential civil service status, political affiliation, marital status, or handicapping condition;

    **(B)** an organization which advocates the overthrow of the constitutional form of government of the United States;

    **(C)** an organization sponsored by an agency; or

    **(D)** an organization which participates in the conduct of a strike against the Government or any agency thereof or imposes a duty or obligation to conduct, assist, or participate in such a strike;

**(5)** "dues" means dues, fees, and assessments;

Add.034

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(6)** "Authority" means the Federal Labor Relations Authority described in section 7104(a) of this title;

**(7)** "Panel" means the Federal Service Impasses Panel described in section 7119(c) of this title;

**(8)** "collective bargaining agreement" means an agreement entered into as a result of collective bargaining pursuant to the provisions of this chapter;

**(9)** "grievance" means any complaint--

    **(A)** by any employee concerning any matter relating to the employment of the employee;

    **(B)** by any labor organization concerning any matter relating to the employment of any employee; or

    **(C)** by any employee, labor organization, or agency concerning--

        **(i)** the effect or interpretation, or a claim of breach, of a collective bargaining agreement; or

        **(ii)** any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment;

**(10)** "supervisor" means an individual employed by an agency having authority in the interest of the agency to hire, direct, assign, promote, reward, transfer, furlough, layoff, recall, suspend, discipline, or remove employees, to adjust their grievances, or to effectively recommend such action, if the exercise of the authority is not merely routine or clerical in nature but requires the consistent exercise of independent judgment, except that, with respect to any unit which includes firefighters or nurses, the term "supervisor" includes only those individuals who devote a preponderance of their employment time to exercising such authority;

**(11)** "management official" means an individual employed by an agency in a position the duties and responsibilities of which require or authorize the individual to formulate, determine, or influence the policies of the agency;

**(12)** "collective bargaining" means the performance of the mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees and to execute, if requested by either party, a written document incorporating any collective bargaining agreement reached, but the obligation referred to in this paragraph does not compel either party to agree to a proposal or to make a concession;

**(13)** "confidential employee" means an employee who acts in a confidential capacity with respect to an individual who formulates or effectuates management policies in the field of labor-management relations;

Add.035

**(14)** "conditions of employment" means personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions, except that such term does not include policies, practices, and matters--

**(A)** relating to political activities prohibited under subchapter III of chapter 73 of this title;

**(B)** relating to the classification of any position; or

**(C)** to the extent such matters are specifically provided for by Federal statute;

**(15)** "professional employee" means--

**(A)** an employee engaged in the performance of work--

**(i)** requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital (as distinguished from knowledge acquired by a general academic education, or from an apprenticeship, or from training in the performance of routine mental, manual, mechanical, or physical activities);

**(ii)** requiring the consistent exercise of discretion and judgment in its performance;

**(iii)** which is predominantly intellectual and varied in character (as distinguished from routine mental, manual, mechanical, or physical work); and

**(iv)** which is of such character that the output produced or the result accomplished by such work cannot be standardized in relation to a given period of time; or

**(B)** an employee who has completed the courses of specialized intellectual instruction and study described in subparagraph (A)(i) of this paragraph and is performing related work under appropriate direction or guidance to qualify the employee as a professional employee described in subparagraph (A) of this paragraph;

**(16)** "exclusive representative" means any labor organization which--

**(A)** is certified as the exclusive representative of employees in an appropriate unit pursuant to section 7111 of this title; or

**(B)** was recognized by an agency immediately before the effective date of this chapter as the exclusive representative of employees in an appropriate unit--

**(i)** on the basis of an election, or

Add.036

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

(ii) on any basis other than an election,

and continues to be so recognized in accordance with the provisions of this chapter;

(17) "firefighter" means any employee engaged in the performance of work directly connected with the control and extinguishment of fires or the maintenance and use of firefighting apparatus and equipment; and

(18) "United States" means the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands, the Trust Territory of the Pacific Islands, and any territory or possession of the United States.

(b)(1) The President may issue an order excluding any agency or subdivision thereof from coverage under this chapter if the President determines that--

(A) the agency or subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and

(B) the provisions of this chapter cannot be applied to that agency or subdivision in a manner consistent with national security requirements and considerations.

(2) The President may issue an order suspending any provision of this chapter with respect to any agency, installation, or activity located outside the 50 States and the District of Columbia, if the President determines that the suspension is necessary in the interest of national security.

**CREDIT(S)**

(Added Pub.L. 95-454, Title VII, § 701, Oct. 13, 1978, 92 Stat. 1192; amended Pub.L. 96-465, Title II, § 2314(g), Oct. 17, 1980, 94 Stat. 2168; Pub.L. 102-54, § 13(b)(1), June 13, 1991, 105 Stat. 274; Pub.L. 103-359, Title V, § 501(j), Oct. 14, 1994, 108 Stat. 3430; Pub.L. 104-201, Div. A, Title XVI, § 1634(a), Sept. 23, 1996, 110 Stat. 2752; Pub.L. 105-220, Title III, § 341(e), Aug. 7, 1998, 112 Stat. 1092; Pub.L. 105-277, Div. G, Title XIV, § 1422(b)(1), Oct. 21, 1998, 112 Stat. 2681-792; Pub.L. 106-554, § 1(a)(4) [Div. B, Title I, § 139], Dec. 21, 2000, 114 Stat. 2763, 2763A-235; Pub.L. 108-271, § 8(b), July 7, 2004, 118 Stat. 814; Pub.L. 113-235, Div. H, Title I, § 1301(b), Dec. 16, 2014, 128 Stat. 2537.)

United States Code Annotated
    Title 5. Government Organization and Employees (Refs & Annos)
        Part III. Employees (Refs & Annos)
            Subpart F. Labor-Management and Employee Relations
                Chapter 71. Labor-Management Relations (Refs & Annos)
                    Subchapter I. General Provisions

5 U.S.C.A. § 7105

§ 7105. Powers and duties of the Authority

Currentness

**(a)(1)** The Authority shall provide leadership in establishing policies and guidance relating to matters under this chapter, and, except as otherwise provided, shall be responsible for carrying out the purpose of this chapter.

**(2)** The Authority shall, to the extent provided in this chapter and in accordance with regulations prescribed by the Authority--

**(A)** determine the appropriateness of units for labor organization representation under section 7112 of this title;

**(B)** supervise or conduct elections to determine whether a labor organization has been selected as an exclusive representative by a majority of the employees in an appropriate unit and otherwise administer the provisions of section 7111 of this title relating to the according of exclusive recognition to labor organizations;

**(C)** prescribe criteria and resolve issues relating to the granting of national consultation rights under section 7113 of this title;

**(D)** prescribe criteria and resolve issues relating to determining compelling need for agency rules or regulations under section 7117(b) of this title;

**(E)** resolves issues relating to the duty to bargain in good faith under section 7117(c) of this title;

**(F)** prescribe criteria relating to the granting of consultation rights with respect to conditions of employment under section 7117(d) of this title;

**(G)** conduct hearings and resolve complaints of unfair labor practices under section 7118 of this title;

**(H)** resolve exceptions to arbitrator's awards under section 7122 of this title; and

**(I)** take such other actions as are necessary and appropriate to effectively administer the provisions of this chapter.

Add.038

**(b)** The Authority shall adopt an official seal which shall be judicially noticed.

**(c)** The principal office of the Authority shall be in or about the District of Columbia, but the Authority may meet and exercise any or all of its powers at any time or place. Except as otherwise expressly provided by law, the Authority may, by one or more of its members or by such agents as it may designate, make any appropriate inquiry necessary to carry out its duties wherever persons subject to this chapter are located. Any member who participates in the inquiry shall not be disqualified from later participating in a decision of the Authority in any case relating to the inquiry.

**(d)** The Authority shall appoint an Executive Director and such regional directors, administrative law judges under section 3105 of this title, and other individuals as it may from time to time find necessary for the proper performance of its functions. The Authority may delegate to officers and employees appointed under this subsection authority to perform such duties and make such expenditures as may be necessary.

**(e)(1)** The Authority may delegate to any regional director its authority under this chapter--

**(A)** to determine whether a group of employees is an appropriate unit;

**(B)** to conduct investigations and to provide for hearings;

**(C)** to determine whether a question of representation exists and to direct an election; and

**(D)** to supervise or conduct secret ballot elections and certify the results thereof.

**(2)** The Authority may delegate to any administrative law judge appointed under subsection (d) of this section its authority under section 7118 of this title to determine whether any person has engaged in or is engaging in an unfair labor practice.

**(f)** If the Authority delegates any authority to any regional director or administrative law judge to take any action pursuant to subsection (e) of this section, the Authority may, upon application by any interested person filed within 60 days after the date of the action, review such action, but the review shall not, unless specifically ordered by the Authority, operate as a stay of action. The Authority may affirm, modify, or reverse any action reviewed under this subsection. If the Authority does not undertake to grant review of the action under this subsection within 60 days after the later of--

**(1)** the date of the action; or

**(2)** the date of the filing of any application under this subsection for review of the action;

the action shall become the action of the Authority at the end of such 60-day period.

**(g)** In order to carry out its functions under this chapter, the Authority may--

Add.039

**WESTLAW**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(1)** hold hearings;

**(2)** administer oaths, take the testimony or deposition of any person under oath, and issue subpenas as provided in section 7132 of this title; and

**(3)** may require an agency or a labor organization to cease and desist from violations of this chapter and require it to take any remedial action it considers appropriate to carry out the policies of this chapter.

**(h)** Except as provided in section 518 of title 28, relating to litigation before the Supreme Court, attorneys designated by the Authority may appear for the Authority and represent the Authority in any civil action brought in connection with any function carried out by the Authority pursuant to this title or as otherwise authorized by law.

**(i)** In the exercise of the functions of the Authority under this title, the Authority may request from the Director of the Office of Personnel Management an advisory opinion concerning the proper interpretation of rules, regulations, or policy directives issued by the Office of Personnel Management in connection with any matter before the Authority.

## CREDIT(S)

(Added Pub.L. 95-454, Title VII, § 701, Oct. 13, 1978, 92 Stat. 1196.)

Notes of Decisions (39)

**O'CONNOR'S CROSS REFERENCES**
Executive Order: No. 12391, Nov. 4, 1982, 47 Fed. Reg. 50457.

See also 29 C.F.R. pt. 458.

5 U.S.C.A. § 7105, 5 USCA § 7105
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add.040

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part III. Employees (Refs & Annos)
      Subpart F. Labor-Management and Employee Relations
        Chapter 71. Labor-Management Relations (Refs & Annos)
          Subchapter II. Rights and Duties of Agencies and Labor Organizations

5 U.S.C.A. § 7111

§ 7111. Exclusive recognition of labor organizations

Currentness

**(a)** An agency shall accord exclusive recognition to a labor organization if the organization has been selected as the representative, in a secret ballot election, by a majority of the employees in an appropriate unit who cast valid ballots in the election.

**(b)** If a petition is filed with the Authority--

**(1)** by any person alleging--

**(A)** in the case of an appropriate unit for which there is no exclusive representative, that 30 percent of the employees in the appropriate unit wish to be represented for the purpose of collective bargaining by an exclusive representative, or

**(B)** in the case of an appropriate unit for which there is an exclusive representative, that 30 percent of the employees in the unit allege that the exclusive representative is no longer the representative of the majority of the employees in the unit; or

**(2)** by any person seeking clarification of, or an amendment to, a certification then in effect or a matter relating to representation;

the Authority shall investigate the petition, and if it has reasonable cause to believe that a question of representation exists, it shall provide an opportunity for a hearing (for which a transcript shall be kept) after reasonable notice. If the Authority finds on the record of the hearing that a question of representation exists, the Authority shall supervise or conduct an election on the question by secret ballot and shall certify the results thereof. An election under this subsection shall not be conducted in any appropriate unit or in any subdivision thereof within which, in the preceding 12 calendar months, a valid election under this subsection has been held.

**(c)** A labor organization which--

**(1)** has been designated by at least 10 percent of the employees in the unit specified in any petition filed pursuant to subsection (b) of this section;

Add.041

**(2)** has submitted a valid copy of a current or recently expired collective bargaining agreement for the unit; or

**(3)** has submitted other evidence that it is the exclusive representative of the employees involved;

may intervene with respect to a petition filed pursuant to subsection (b) of this section and shall be placed on the ballot of any election under such subsection (b) with respect to the petition.

**(d)** The Authority shall determine who is eligible to vote in any election under this section and shall establish rules governing any such election, which shall include rules allowing employees eligible to vote the opportunity to choose--

**(1)** from labor organizations on the ballot, that labor organization which the employees wish to have represent them; or

**(2)** not to be represented by a labor organization.

In any election in which no choice on the ballot receives a majority of the votes cast, a runoff election shall be conducted between the two choices receiving the highest number of votes. A labor organization which receives the majority of the votes cast in an election shall be certified by the Authority as the exclusive representative.

**(e)** A labor organization seeking exclusive recognition shall submit to the Authority and the agency involved a roster of its officers and representatives, a copy of its constitution and bylaws, and a statement of its objectives.

**(f)** Exclusive recognition shall not be accorded to a labor organization--

**(1)** if the Authority determines that the labor organization is subject to corrupt influences or influences opposed to democratic principles;

**(2)** in the case of a petition filed pursuant to subsection (b)(1)(A) of this section, if there is not credible evidence that at least 30 percent of the employees in the unit specified in the petition wish to be represented for the purpose of collective bargaining by the labor organization seeking exclusive recognition;

**(3)** if there is then in effect a lawful written collective bargaining agreement between the agency involved and an exclusive representative (other than the labor organization seeking exclusive recognition) covering any employees included in the unit specified in the petition, unless--

**(A)** the collective bargaining agreement has been in effect for more than 3 years, or

**(B)** the petition for exclusive recognition is filed not more than 105 days and not less than 60 days before the expiration date of the collective bargaining agreement; or

Add.042

**(4)** if the Authority has, within the previous 12 calendar months, conducted a secret ballot election for the unit described in any petition under this section and in such election a majority of the employees voting chose a labor organization for certification as the unit's exclusive representative.

**(g)** Nothing in this section shall be construed to prohibit the waiving of hearings by stipulation for the purpose of a consent election in conformity with regulations and rules or decisions of the Authority.

### CREDIT(S)

(Added Pub.L. 95-454, Title VII, § 701, Oct. 13, 1978, 92 Stat. 1199.)

Notes of Decisions (6)

5 U.S.C.A. § 7111, 5 USCA § 7111
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**                                         © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Add.043

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part III. Employees (Refs & Annos)
      Subpart F. Labor-Management and Employee Relations
        Chapter 71. Labor-Management Relations (Refs & Annos)
          Subchapter II. Rights and Duties of Agencies and Labor Organizations

5 U.S.C.A. § 7114

§ 7114. Representation rights and duties

Currentness

**(a)(1)** A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit. An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership.

**(2)** An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at--

**(A)** any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment; or

**(B)** any examination of an employee in the unit by a representative of the agency in connection with an investigation if--

**(i)** the employee reasonably believes that the examination may result in disciplinary action against the employee; and

**(ii)** the employee requests representation.

**(3)** Each agency shall annually inform its employees of their rights under paragraph (2)(B) of this subsection.

**(4)** Any agency and any exclusive representative in any appropriate unit in the agency, through appropriate representatives, shall meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement. In addition, the agency and the exclusive representative may determine appropriate techniques, consistent with the provisions of section 7119 of this title, to assist in any negotiation.

**(5)** The rights of an exclusive representative under the provisions of this subsection shall not be construed to preclude an employee from--

Add.044

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(A)** being represented by an attorney or other representative, other than the exclusive representative, of the employee's own choosing in any grievance or appeal action; or

**(B)** exercising grievance or appellate rights established by law, rule, or regulation;

except in the case of grievance or appeal procedures negotiated under this chapter.

**(b)** The duty of an agency and an exclusive representative to negotiate in good faith under subsection (a) of this section shall include the obligation--

**(1)** to approach the negotiations with a sincere resolve to reach a collective bargaining agreement;

**(2)** to be represented at the negotiations by duly authorized representatives prepared to discuss and negotiate on any condition of employment;

**(3)** to meet at reasonable times and convenient places as frequently as may be necessary, and to avoid unnecessary delays;

**(4)** in the case of an agency, to furnish to the exclusive representative involved, or its authorized representative, upon request and, to the extent not prohibited by law, data--

**(A)** which is normally maintained by the agency in the regular course of business;

**(B)** which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining; and

**(C)** which does not constitute guidance, advice, counsel, or training provided for management officials or supervisors, relating to collective bargaining; and

**(5)** if agreement is reached, to execute on the request of any party to the negotiation a written document embodying the agreed terms, and to take such steps as are necessary to implement such agreement.

**(c)(1)** An agreement between any agency and an exclusive representative shall be subject to approval by the head of the agency.

**(2)** The head of the agency shall approve the agreement within 30 days from the date the agreement is executed if the agreement is in accordance with the provisions of this chapter and any other applicable law, rule, or regulation (unless the agency has granted an exception to the provision).

Add.045

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(3)** If the head of the agency does not approve or disapprove the agreement within the 30-day period, the agreement shall take effect and shall be binding on the agency and the exclusive representative subject to the provisions of this chapter and any other applicable law, rule, or regulation.

**(4)** A local agreement subject to a national or other controlling agreement at a higher level shall be approved under the procedures of the controlling agreement or, if none, under regulations prescribed by the agency.

**CREDIT(S)**

(Added Pub.L. 95-454, Title VII, § 701, Oct. 13, 1978, 92 Stat. 1202.)

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part III. Employees (Refs & Annos)
      Subpart F. Labor-Management and Employee Relations
        Chapter 71. Labor-Management Relations (Refs & Annos)
          Subchapter II. Rights and Duties of Agencies and Labor Organizations

5 U.S.C.A. § 7116

§ 7116. Unfair labor practices

Currentness

**(a)** For the purpose of this chapter, it shall be an unfair labor practice for an agency--

**(1)** to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

**(2)** to encourage or discourage membership in any labor organization by discrimination in connection with hiring, tenure, promotion, or other conditions of employment;

**(3)** to sponsor, control, or otherwise assist any labor organization, other than to furnish, upon request, customary and routine services and facilities if the services and facilities are also furnished on an impartial basis to other labor organizations having equivalent status;

**(4)** to discipline or otherwise discriminate against an employee because the employee has filed a complaint, affidavit, or petition, or has given any information or testimony under this chapter;

**(5)** to refuse to consult or negotiate in good faith with a labor organization as required by this chapter;

**(6)** to fail or refuse to cooperate in impasse procedures and impasse decisions as required by this chapter;

**(7)** to enforce any rule or regulation (other than a rule or regulation implementing section 2302 of this title) which is in conflict with any applicable collective bargaining agreement if the agreement was in effect before the date the rule or regulation was prescribed; or

**(8)** to otherwise fail or refuse to comply with any provision of this chapter.

**(b)** For the purpose of this chapter, it shall be an unfair labor practice for a labor organization--

**(1)** to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

Add.047

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(2)** to cause or attempt to cause an agency to discriminate against any employee in the exercise by the employee of any right under this chapter;

**(3)** to coerce, discipline, fine, or attempt to coerce a member of the labor organization as punishment, reprisal, or for the purpose of hindering or impeding the member's work performance or productivity as an employee or the discharge of the member's duties as an employee;

**(4)** to discriminate against an employee with regard to the terms or conditions of membership in the labor organization on the basis of race, color, creed, national origin, sex, age, preferential or nonpreferential civil service status, political affiliation, marital status, or handicapping condition;

**(5)** to refuse to consult or negotiate in good faith with an agency as required by this chapter;

**(6)** to fail or refuse to cooperate in impasse procedures and impasse decisions as required by this chapter;

**(7)(A)** to call, or participate in, a strike, work stoppage, or slowdown, or picketing of an agency in a labor-management dispute if such picketing interferes with an agency's operations, or

**(B)** to condone any activity described in subparagraph (A) of this paragraph by failing to take action to prevent or stop such activity; or

**(8)** to otherwise fail or refuse to comply with any provision of this chapter.

Nothing in paragraph (7) of this subsection shall result in any informational picketing which does not interfere with an agency's operations being considered as an unfair labor practice.

**(c)** For the purpose of this chapter it shall be an unfair labor practice for an exclusive representative to deny membership to any employee in the appropriate unit represented by such exclusive representative except for failure--

**(1)** to meet reasonable occupational standards uniformly required for admission, or

**(2)** to tender dues uniformly required as a condition of acquiring and retaining membership.

This subsection does not preclude any labor organization from enforcing discipline in accordance with procedures under its constitution or bylaws to the extent consistent with the provisions of this chapter.

**(d)** Issues which can properly be raised under an appeals procedure may not be raised as unfair labor practices prohibited under this section. Except for matters wherein, under section 7121(e) and (f) of this title, an employee has an option of using the negotiated grievance procedure or an appeals procedure, issues which can be raised under a grievance procedure may, in the

Add.048

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

discretion of the aggrieved party, be raised under the grievance procedure or as an unfair labor practice under this section, but not under both procedures.

**(e)** The expression of any personal view, argument, opinion or the making of any statement which--

**(1)** publicizes the fact of a representational election and encourages employees to exercise their right to vote in such election,

**(2)** corrects the record with respect to any false or misleading statement made by any person, or

**(3)** informs employees of the Government's policy relating to labor-management relations and representation,

shall not, if the expression contains no threat of reprisal or force or promise of benefit or was not made under coercive conditions, (A) constitute an unfair labor practice under any provision of this chapter, or (B) constitute grounds for the setting aside of any election conducted under any provisions of this chapter.

### CREDIT(S)

(Added Pub.L. 95-454, Title VII, § 701, Oct. 13, 1978, 92 Stat. 1204.)

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part III. Employees (Refs & Annos)
      Subpart F. Labor-Management and Employee Relations
        Chapter 71. Labor-Management Relations (Refs & Annos)
          Subchapter II. Rights and Duties of Agencies and Labor Organizations

5 U.S.C.A. § 7117

§ 7117. Duty to bargain in good faith; compelling need; duty to consult

Currentness

**(a)(1)** Subject to paragraph (2) of this subsection, the duty to bargain in good faith shall, to the extent not inconsistent with any Federal law or any Government-wide rule or regulation, extend to matters which are the subject of any rule or regulation only if the rule or regulation is not a Government-wide rule or regulation.

**(2)** The duty to bargain in good faith shall, to the extent not inconsistent with Federal law or any Government-wide rule or regulation, extend to matters which are the subject of any agency rule or regulation referred to in paragraph (3) of this subsection only if the Authority has determined under subsection (b) of this section that no compelling need (as determined under regulations prescribed by the Authority) exists for the rule or regulation.

**(3)** Paragraph (2) of the subsection applies to any rule or regulation issued by any agency or issued by any primary national subdivision of such agency, unless an exclusive representative represents an appropriate unit including not less than a majority of the employees in the issuing agency or primary national subdivision, as the case may be, to whom the rule or regulation is applicable.

**(b)(1)** In any case of collective bargaining in which an exclusive representative alleges that no compelling need exists for any rule or regulation referred to in subsection (a)(3) of this section which is then in effect and which governs any matter at issue in such collective bargaining, the Authority shall determine under paragraph (2) of this subsection, in accordance with regulations prescribed by the Authority, whether such a compelling need exists.

**(2)** For the purpose of this section, a compelling need shall be determined not to exist for any rule or regulation only if--

**(A)** the agency, or primary national subdivision, as the case may be, which issued the rule or regulation informs the Authority in writing that a compelling need for the rule or regulation does not exist; or

**(B)** the Authority determines that a compelling need for a rule or regulation does not exist.

**(3)** A hearing may be held, in the discretion of the Authority, before a determination is made under this subsection. If a hearing is held, it shall be expedited to the extent practicable and shall not include the General Counsel as a party.

Add.050

**(4)** The agency, or primary national subdivision, as the case may be, which issued the rule or regulation shall be a necessary party at any hearing under this subsection.

**(c)(1)** Except in any case to which subsection (b) of this section applies, if an agency involved in collective bargaining with an exclusive representative alleges that the duty to bargain in good faith does not extend to any matter, the exclusive representative may appeal the allegation to the Authority in accordance with the provisions of this subsection.

**(2)** The exclusive representative may, on or before the 15th day after the date on which the agency first makes the allegation referred to in paragraph (1) of this subsection, institute an appeal under this subsection by--

  **(A)** filing a petition with the Authority; and

  **(B)** furnishing a copy of the petition to the head of the agency.

**(3)** On or before the 30th day after the date of the receipt by the head of the agency of the copy of the petition under paragraph (2)(B) of this subsection, the agency shall--

  **(A)** file with the Authority a statement--

    **(i)** withdrawing the allegation; or

    **(ii)** setting forth in full its reasons supporting the allegation; and

  **(B)** furnish a copy of such statement to the exclusive representative.

**(4)** On or before the 15th day after the date of the receipt by the exclusive representative of a copy of a statement under paragraph (3)(B) of this subsection, the exclusive representative shall file with the Authority its response to the statement.

**(5)** A hearing may be held, in the discretion of the Authority, before a determination is made under this subsection. If a hearing is held, it shall not include the General Counsel as a party.

**(6)** The Authority shall expedite proceedings under this subsection to the extent practicable and shall issue to the exclusive representative and to the agency a written decision on the allegation and specific reasons therefor at the earliest practicable date.

**(d)(1)** A labor organization which is the exclusive representative of a substantial number of employees, determined in accordance with criteria prescribed by the Authority, shall be granted consultation rights by any agency with respect to any Government-wide rule or regulation issued by the agency effecting any substantive change in any condition of employment. Such consultation rights shall terminate when the labor organization no longer meets the criteria prescribed by the Authority. Any issue relating to a labor organization's eligibility for, or continuation of, such consultation rights shall be subject to determination by the Authority.

Add.051

**(2)** A labor organization having consultation rights under paragraph (1) of this subsection shall--

    **(A)** be informed of any substantive change in conditions of employment proposed by the agency, and

    **(B)** shall be permitted reasonable time to present its views and recommendations regarding the changes.

**(3)** If any views or recommendations are presented under paragraph (2) of this subsection to an agency by any labor organization--

    **(A)** the agency shall consider the views or recommendations before taking final action on any matter with respect to which the views or recommendations are presented; and

    **(B)** the agency shall provide the labor organization a written statement of the reasons for taking the final action.

**CREDIT(S)**

(Added Pub.L. 95-454, Title VII, § 701, Oct. 13, 1978, 92 Stat. 1205.)

Notes of Decisions (52)

5 U.S.C.A. § 7117, 5 USCA § 7117
Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

**End of Document**      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part III. Employees (Refs & Annos)
      Subpart F. Labor-Management and Employee Relations
        Chapter 71. Labor-Management Relations (Refs & Annos)
          Subchapter II. Rights and Duties of Agencies and Labor Organizations

5 U.S.C.A. § 7118

§ 7118. Prevention of unfair labor practices

Currentness

**(a)(1)** If any agency or labor organization is charged by any person with having engaged in or engaging in an unfair labor practice, the General Counsel shall investigate the charge and may issue and cause to be served upon the agency or labor organization a complaint. In any case in which the General Counsel does not issue a complaint because the charge fails to state an unfair labor practice, the General Counsel shall provide the person making the charge a written statement of the reasons for not issuing a complaint.

**(2)** Any complaint under paragraph (1) of this subsection shall contain a notice--

**(A)** of the charge;

**(B)** that a hearing will be held before the Authority (or any member thereof or before an individual employed by the authority and designated for such purpose); and

**(C)** of the time and place fixed for the hearing.

**(3)** The labor organization or agency involved shall have the right to file an answer to the original and any amended complaint and to appear in person or otherwise and give testimony at the time and place fixed in the complaint for the hearing.

**(4)(A)** Except as provided in subparagraph (B) of this paragraph, no complaint shall be issued based on any alleged unfair labor practice which occurred more than 6 months before the filing of the charge with the Authority.

**(B)** If the General Counsel determines that the person filing any charge was prevented from filing the charge during the 6-month period referred to in subparagraph (A) of this paragraph by reason of--

**(i)** any failure of the agency or labor organization against which the charge is made to perform a duty owed to the person, or

**(ii)** any concealment which prevented discovery of the alleged unfair labor practice during the 6-month period,

Add.053

the General Counsel may issue a complaint based on the charge if the charge was filed during the 6-month period beginning on the day of the discovery by the person of the alleged unfair labor practice.

**(5)** The General Counsel may prescribe regulations providing for informal methods by which the alleged unfair labor practice may be resolved prior to the issuance of a complaint.

**(6)** The Authority (or any member thereof or any individual employed by the Authority and designated for such purpose) shall conduct a hearing on the complaint not earlier than 5 days after the date on which the complaint is served. In the discretion of the individual or individuals conducting the hearing, any person involved may be allowed to intervene in the hearing and to present testimony. Any such hearing shall, to the extent practicable, be conducted in accordance with the provisions of subchapter II of chapter 5 of this title, except that the parties shall not be bound by rules of evidence, whether statutory, common law, or adopted by a court. A transcript shall be kept of the hearing. After such a hearing the Authority, in its discretion, may upon notice receive further evidence or hear argument.

**(7)** If the Authority (or any member thereof or any individual employed by the Authority and designated for such purpose) determines after any hearing on a complaint under paragraph (5) of this subsection that the preponderance of the evidence received demonstrates that the agency or labor organization named in the complaint has engaged in or is engaging in an unfair labor practice, then the individual or individuals conducting the hearing shall state in writing their findings of fact and shall issue and cause to be served on the agency or labor organization an order--

**(A)** to cease and desist from any such unfair labor practice in which the agency or labor organization is engaged;

**(B)** requiring the parties to renegotiate a collective bargaining agreement in accordance with the order of the Authority and requiring that the agreement, as amended, be given retroactive effect;

**(C)** requiring reinstatement of an employee with backpay in accordance with section 5596 of this title; or

**(D)** including any combination of the actions described in subparagraphs (A) through (C) of this paragraph or such other action as will carry out the purpose of this chapter.

If any such order requires reinstatement of an employee with backpay, backpay may be required of the agency (as provided in section 5596 of this title) or of the labor organization, as the case may be, which is found to have engaged in the unfair labor practice involved.

**(8)** If the individual or individuals conducting the hearing determine that the preponderance of the evidence received fails to demonstrate that the agency or labor organization named in the complaint has engaged in or is engaging in an unfair labor practice, the individual or individuals shall state in writing their findings of fact and shall issue an order dismissing the complaint.

**(b)** In connection with any matter before the Authority in any proceeding under this section, the Authority may request, in accordance with the provisions of section 7105(i) of this title, from the Director of the Office of Personnel Management an advisory opinion concerning the proper interpretation of rules, regulations, or other policy directives issued by the Office of Personnel Management.

Add.054

**CREDIT(S)**

(Added Pub.L. 95-454, Title VII, § 701, Oct. 13, 1978, 92 Stat. 1207.)

Notes of Decisions (17)

**O'CONNOR'S CROSS REFERENCES**

See also 5 C.F.R. pt. 2423.

5 U.S.C.A. § 7118, 5 USCA § 7118

Current through P.L. 119-59. Some statute sections may be more current, see credits for details.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part III. Employees (Refs & Annos)
      Subpart F. Labor-Management and Employee Relations
        Chapter 71. Labor-Management Relations (Refs & Annos)
          Subchapter III. Grievances, Appeals, and Review (Refs & Annos)

5 U.S.C.A. § 7121

§ 7121. Grievance procedures

Effective: October 17, 1998

Currentness

**(a)(1)** Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d), (e), and (g) of this section, the procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage.

**(2)** Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

**(b)(1)** Any negotiated grievance procedure referred to in subsection (a) of this section shall--

  **(A)** be fair and simple,

  **(B)** provide for expeditious processing, and

  **(C)** include procedures that--

    **(i)** assure an exclusive representative the right, in its own behalf or on behalf of any employee in the unit represented by the exclusive representative, to present and process grievances;

    **(ii)** assure such an employee the right to present a grievance on the employee's own behalf, and assure the exclusive representative the right to be present during the grievance proceeding; and

    **(iii)** provide that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may be invoked by either the exclusive representative or the agency.

**(2)(A)** The provisions of a negotiated grievance procedure providing for binding arbitration in accordance with paragraph (1) (C)(iii) shall, if or to the extent that an alleged prohibited personnel practice is involved, allow the arbitrator to order--

Add.056

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(i)** a stay of any personnel action in a manner similar to the manner described in section 1221(c) with respect to the Merit Systems Protection Board; and

**(ii)** the taking, by an agency, of any disciplinary action identified under section 1215(a)(3) that is otherwise within the authority of such agency to take.

**(B)** Any employee who is the subject of any disciplinary action ordered under subparagraph (A)(ii) may appeal such action to the same extent and in the same manner as if the agency had taken the disciplinary action absent arbitration.

**(c)** The preceding subsections of this section shall not apply with respect to any grievance concerning--

**(1)** any claimed violation of subchapter III of chapter 73 of this title (relating to prohibited political activities);

**(2)** retirement, life insurance, or health insurance;

**(3)** a suspension or removal under section 7532 of this title;

**(4)** any examination, certification, or appointment; or

**(5)** the classification of any position which does not result in the reduction in grade or pay of an employee.

**(d)** An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first. Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.

**(e)(1)** Matters covered under sections 4303 and 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both. Similar matters which arise under other personnel systems applicable to employees covered by this chapter may, in the discretion of the aggrieved employee, be raised either under the appellate procedures, if any, applicable to those matters, or under the negotiated grievance procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise a matter either under the applicable appellate procedures or under the negotiated grievance procedure at such time as the employee timely files a notice of appeal under the

Add.057

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

applicable appellate procedures or timely files a grievance in writing in accordance with the provisions of the parties' negotiated grievance procedure, whichever event occurs first.

**(2)** In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, an arbitrator shall be governed by section 7701(c)(1) of this title, as applicable.

**(f)** In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the Board. In matters similar to those covered under sections 4303 and 7512 of this title which arise under other personnel systems and which an aggrieved employee has raised under the negotiated grievance procedure, judicial review of an arbitrator's award may be obtained in the same manner and on the same basis as could be obtained of a final decision in such matters raised under applicable appellate procedures.

**(g)(1)** This subsection applies with respect to a prohibited personnel practice other than a prohibited personnel practice to which subsection (d) applies.

**(2)** An aggrieved employee affected by a prohibited personnel practice described in paragraph (1) may elect not more than one of the remedies described in paragraph (3) with respect thereto. For purposes of the preceding sentence, a determination as to whether a particular remedy has been elected shall be made as set forth under paragraph (4).

**(3)** The remedies described in this paragraph are as follows:

**(A)** An appeal to the Merit Systems Protection Board under section 7701.

**(B)** A negotiated grievance procedure under this section.

**(C)** Procedures for seeking corrective action under subchapters II and III of chapter 12.

**(4)** For the purpose of this subsection, a person shall be considered to have elected--

**(A)** the remedy described in paragraph (3)(A) if such person has timely filed a notice of appeal under the applicable appellate procedures;

**(B)** the remedy described in paragraph (3)(B) if such person has timely filed a grievance in writing, in accordance with the provisions of the parties' negotiated procedure; or

**(C)** the remedy described in paragraph (3)(C) if such person has sought corrective action from the Office of Special Counsel by making an allegation under section 1214(a)(1).

**(h)** Settlements and awards under this chapter shall be subject to the limitations in section 5596(b)(4) of this title.

Add.058

**CREDIT(S)**

(Added Pub.L. 95-454, Title VII, § 701, Oct. 13, 1978, 92 Stat. 1211; amended Pub.L. 103-424, § 9, Oct. 29, 1994, 108 Stat. 4365; Pub.L. 105-261, Div. A, Title XI, § 1104(b), Oct. 17, 1998, 112 Stat. 2142.)

United States Code Annotated
 Title 5. Government Organization and Employees (Refs & Annos)
  Part III. Employees (Refs & Annos)
   Subpart F. Labor-Management and Employee Relations
    Chapter 75. Adverse Actions (Refs & Annos)
     Subchapter II. Removal, Suspension for More than 14 Days, Reduction in Grade or Pay, or Furlough for 30 Days or Less (Refs & Annos)

5 U.S.C.A. § 7512

§ 7512. Actions covered

Effective: November 25, 2015
Currentness

This subchapter applies to--

(1) a removal;

(2) a suspension for more than 14 days;

(3) a reduction in grade;

(4) a reduction in pay; and

(5) a furlough of 30 days or less;

but does not apply to--

(A) a suspension or removal under section 7532 of this title,

(B) a reduction-in-force action under section 3502 of this title,

(C) the reduction in grade of a supervisor or manager who has not completed the probationary period under section 3321(a)(2) of this title if such reduction is to the grade held immediately before becoming such a supervisor or manager,

(D) a reduction in grade or removal under section 4303 of this title,

(E) an action initiated under section 1215 or 7521 of this title, or

Add.060

© 2026 Thomson Reuters. No claim to original U.S. Government Works.          1

**(F)** a suitability action taken by the Office under regulations prescribed by the Office, subject to the rules prescribed by the President under this title for the administration of the competitive service.

**CREDIT(S)**

(Added Pub.L. 95-454, Title II, § 204(a), Oct. 13, 1978, 92 Stat. 1136; amended Pub.L. 101-12, § 9(a)(2), Apr. 10, 1989, 103 Stat. 35; Pub.L. 114-92, Div. A, Title X, § 1086(f)(9), Nov. 25, 2015, 129 Stat. 1010.)

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part III. Employees (Refs & Annos)
      Subpart F. Labor-Management and Employee Relations
        Chapter 75. Adverse Actions (Refs & Annos)
          Subchapter II. Removal, Suspension for More than 14 Days, Reduction in Grade or Pay, or Furlough for 30 Days or Less (Refs & Annos)

5 U.S.C.A. § 7513

§ 7513. Cause and procedure

Currentness

**(a)** Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service.

**(b)** An employee against whom an action is proposed is entitled to--

**(1)** at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action;

**(2)** a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

**(3)** be represented by an attorney or other representative; and

**(4)** a written decision and the specific reasons therefor at the earliest practicable date.

**(c)** An agency may provide, by regulation, for a hearing which may be in lieu of or in addition to the opportunity to answer provided under subsection (b)(2) of this section.

**(d)** An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title.

**(e)** Copies of the notice of proposed action, the answer of the employee when written, a summary thereof when made orally, the notice of decision and reasons therefor, and any order effecting an action covered by this subchapter, together with any supporting material, shall be maintained by the agency and shall be furnished to the Board upon its request and to the employee affected upon the employee's request.

Add.062

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**CREDIT(S)**

(Added Pub.L. 95-454, Title II, § 204(a), Oct. 13, 1978, 92 Stat. 1136.)

r

United States Code Annotated
  Title 5. Government Organization and Employees (Refs & Annos)
    Part III. Employees (Refs & Annos)
      Subpart F. Labor-Management and Employee Relations
        Chapter 77. Appeals

5 U.S.C.A. § 7701

§ 7701. Appellate procedures

Effective: November 25, 2002
Currentness

**(a)** An employee, or applicant for employment, may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation. An appellant shall have the right--

**(1)** to a hearing for which a transcript will be kept; and

**(2)** to be represented by an attorney or other representative.

Appeals shall be processed in accordance with regulations prescribed by the Board.

**(b)(1)** The Board may hear any case appealed to it or may refer the case to an administrative law judge appointed under section 3105 of this title or other employee of the Board designated by the Board to hear such cases, except that in any case involving a removal from the service, the case shall be heard by the Board, an employee experienced in hearing appeals, or an administrative law judge. The Board, administrative law judge, or other employee (as the case may be) shall make a decision after receipt of the written representations of the parties to the appeal and after opportunity for a hearing under subsection (a)(1) of this section. A copy of the decision shall be furnished to each party to the appeal and to the Office of Personnel Management.

**(2)(A)** If an employee or applicant for employment is the prevailing party in an appeal under this subsection, the employee or applicant shall be granted the relief provided in the decision effective upon the making of the decision, and remaining in effect pending the outcome of any petition for review under subsection (e), unless--

**(i)** the deciding official determines that the granting of such relief is not appropriate; or

**(ii)(I)** the relief granted in the decision provides that such employee or applicant shall return or be present at the place of employment during the period pending the outcome of any petition for review under subsection (e); and

**(II)** the employing agency, subject to the provisions of subparagraph (B), determines that the return or presence of such employee or applicant is unduly disruptive to the work environment.

Add.064

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(B)** If an agency makes a determination under subparagraph (A)(ii)(II) that prevents the return or presence of an employee at the place of employment, such employee shall receive pay, compensation, and all other benefits as terms and conditions of employment during the period pending the outcome of any petition for review under subsection (e).

**(C)** Nothing in the provisions of this paragraph may be construed to require any award of back pay or attorney fees be paid before the decision is final.

**(3)** With respect to an appeal from an adverse action covered by subchapter V of chapter 75, authority to mitigate the personnel action involved shall be available, subject to the same standards as would apply in an appeal involving an action covered by subchapter II of chapter 75 with respect to which mitigation authority under this section exists.

**(c)(1)** Subject to paragraph (2) of this subsection, the decision of the agency shall be sustained under subsection (b) only if the agency's decision--

**(A)** in the case of an action based on unacceptable performance described in section 4303, is supported by substantial evidence; or

**(B)** in any other case, is supported by a preponderance of the evidence.

**(2)** Notwithstanding paragraph (1), the agency's decision may not be sustained under subsection (b) of this section if the employee or applicant for employment--

**(A)** shows harmful error in the application of the agency's procedures in arriving at such decision;

**(B)** shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title; or

**(C)** shows that the decision was not in accordance with law.

**(d)(1)** In any case in which--

**(A)** the interpretation or application of any civil service law, rule, or regulation, under the jurisdiction of the Office of Personnel Management is at issue in any proceeding under this section; and

**(B)** the Director of the Office of Personnel Management is of the opinion that an erroneous decision would have a substantial impact on any civil service law, rule, or regulation under the jurisdiction of the Office;

the Director may as a matter of right intervene or otherwise participate in that proceeding before the Board. If the Director exercises his right to participate in a proceeding before the Board, he shall do so as early in the proceeding as practicable. Nothing in this title shall be construed to permit the Office to interfere with the independent decisionmaking of the Merit Systems Protection Board.

Add.065

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(2)** The Board shall promptly notify the Director whenever the interpretation of any civil service law, rule, or regulation under the jurisdiction of the Office is at issue in any proceeding under this section.

**(e)(1)** Except as provided in section 7702 of this title, any decision under subsection (b) of this section shall be final unless--

    **(A)** a party to the appeal or the Director petitions the Board for review within 30 days after the receipt of the decision; or

    **(B)** the Board reopens and reconsiders a case on its own motion.

The Board, for good cause shown, may extend the 30-day period referred to in subparagraph (A) of this paragraph. One member of the Board may grant a petition or otherwise direct that a decision be reviewed by the full Board. The preceding sentence shall not apply if, by law, a decision of an administrative law judge is required to be acted upon by the Board.

**(2)** The Director may petition the Board for a review under paragraph (1) of this subsection only if the Director is of the opinion that the decision is erroneous and will have a substantial impact on any civil service law, rule, or regulation under the jurisdiction of the Office.

**(f)** The Board, or an administrative law judge or other employee of the Board designated to hear a case, may--

    **(1)** consolidate appeals filed by two or more appellants, or

    **(2)** join two or more appeals filed by the same appellant and hear and decide them concurrently,

if the deciding official or officials hearing the cases are of the opinion that the action could result in the appeals' being processed more expeditiously and would not adversely affect any party.

**(g)(1)** Except as provided in paragraph (2) of this subsection, the Board, or an administrative law judge or other employee of the Board designated to hear a case, may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee (as the case may be) determines that payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.

**(2)** If an employee or applicant for employment is the prevailing party and the decision is based on a finding of discrimination prohibited under section 2302(b)(1) of this title, the payment of attorney fees shall be in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5(k)).

**(h)** The Board may, by regulation, provide for one or more alternative methods for settling matters subject to the appellate jurisdiction of the Board which shall be applicable at the election of an applicant for employment or of an employee who is not in a unit for which a labor organization is accorded exclusive recognition, and shall be in lieu of other procedures provided for

Add.066

under this section. A decision under such a method shall be final, unless the Board reopens and reconsiders a case at the request of the Office of Personnel Management under subsection (e) of this section.

**(i)(1)** Upon the submission of any appeal to the Board under this section, the Board, through reference to such categories of cases, or other means, as it determines appropriate, shall establish and announce publicly the date by which it intends to complete action on the matter. Such date shall assure expeditious consideration of the appeal, consistent with the interests of fairness and other priorities of the Board. If the Board fails to complete action on the appeal by the announced date, and the expected delay will exceed 30 days, the Board shall publicly announce the new date by which it intends to complete action on the appeal.

**(2)** Not later than March 1 of each year, the Board shall submit to the Congress a report describing the number of appeals submitted to it during the preceding fiscal year, the number of appeals on which it completed action during that year, and the number of instances during that year in which it failed to conclude a proceeding by the date originally announced, together with an explanation of the reasons therefor.

**(3)** The Board shall by rule indicate any other category of significant Board action which the Board determines should be subject to the provisions of this subsection.

**(4)** It shall be the duty of the Board, an administrative law judge, or employee designated by the Board to hear any proceeding under this section to expedite to the extent practicable that proceeding.

**(j)** In determining the appealability under this section of any case involving a removal from the service (other than the removal of a reemployed annuitant), neither an individual's status under any retirement system established by or under Federal statute nor any election made by such individual under any such system may be taken into account.

**(k)** The Board may prescribe regulations to carry out the purpose of this section.

## CREDIT(S)

(Pub.L. 89-554, Sept. 6, 1966, 80 Stat. 530; Pub.L. 95-454, Title II, § 205, Oct. 13, 1978, 92 Stat. 1138; Pub.L. 96-54, § 2(a)(45), Aug. 14, 1979, 93 Stat. 384; Pub.L. 99-386, Title II, § 208, Aug. 22, 1986, 100 Stat. 824; Pub.L. 101-12, § 6, Apr. 10, 1989, 103 Stat. 33; Pub.L. 101-194, Title V, § 506(b)(6), Nov. 30, 1989, 103 Stat. 1758; Pub.L. 101-280, § 6(d)(2), May 4, 1990, 104 Stat. 160; Pub.L. 101-376, § 3, Aug. 17, 1990, 104 Stat. 462; Pub.L. 102-175, § 5, Dec. 2, 1991, 105 Stat. 1223; Pub.L. 102-378, § 2(56), Oct. 2, 1992, 106 Stat. 1354; Pub.L. 107-296, Title XIII, § 1321(a)(3), Nov. 25, 2002, 116 Stat. 2297.)

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2026, I electronically filed

PLAINTIFFS-APPELLANTS OPENING BRIEF with the United

States Court of Appeals for the First Circuit by using the CM/ECF

system.  I certify that the following parties or their counsel of record are

registered as ECF Filers and that they will be served by the CM/ECF

system.

*See Attached Service List*

Executed on March 3, 2026, at San Francisco, California.


*/s/ Sandy Giminez*
Sandy Giminez


116

Service List

| | |
|---|---|
| Michael Robert Keefe<br>Segal Roitman LLP<br>33 Harrison Ave, 7th Fl<br>Boston, MA 02111 | Rayford A. Farquhar<br>US Attorney's Office<br>1 Courthouse Way<br>Ste 9200<br>Boston, MA 02210 |
| Abraham R. George<br>US Attorney's Office<br>1 Courthouse Way<br>Ste 9200<br>Boston, MA 02210 | Donald Campbell Lockhart<br>US Attorney's Office<br>1 Courthouse Way<br>Ste 9200<br>Boston, MA 02210 |
| Charles W. Scarborough<br>US Dept. of Justice<br>950 Pennsylvania Ave NW<br>Washington, DC 20530-0001 | Benjamin Thomas Takemoto<br>US Dept. of Justice<br>Civil Division<br>950 Pennsylvania Ave NW<br>Washington, DC 20530-0001 |